[Civ. No. 2515.    Third Appellate District.—January 4, 1923.]

# W. S. GAUSE, Appellant, v. PACIFIC GAS & ELECTRIC COMPANY (a Corporation), Respondent.

[1] CONTRACTS—OBLIGATION TO FURNISH WATER—PARTIES.—The complaint in an action for damages for failure to deliver water to lands leased by plaintiff does not state a cause of action where the only obligation pleaded as existing against the defendant is based upon and is created by the covenants and promises contained in a contract between defendant and the lessor, to which contract plaintiff was not a party.

[2] ID.—CONDITIONAL AGREEMENT TO FURNISH WATER—ACTION FOR DAMAGES—PLEADING.—Where the fair interpretation of the contract of the parties is that the company will furnish the water, if it has any left or is able to do so after using what is necessary for the development of the requisite electric energy, in order to state a cause of action for breach of that contract it is necessary to show that the water was not needed by the company for the development of electric energy.

[3] ID.—WILLFUL AND WRONGFUL ACTS—PLEADING CONCLUSION.—In an action for damages for failure to deliver water in accordance with the terms of such a conditional contract, an allegation that the defendant "willfully and wrongfully and in violation of the terms and provisions of its said contract" shut off the water must be disregarded as stating a mere conclusion of the pleader.

[4] ID.—EXECUTORY CONTRACT TO DELIVER WATER—ABSENCE OF VESTED WATER RIGHT.—Where the contract relating to the supply of water for irrigation does not constitute a conveyance of a water right, but is merely executory and provides for the sale of so much water under conditions therein enumerated, and the water company's obligation thereunder can be modified, suspended, or fully canceled by the happening of the conditions mentioned in said contract, a water right is not thereby vested in the land owner.

[5] ID.—APPURTENANCE TO LAND—CONSTRUCTION OF AGREEMENT—INTENTION OF PARTIES.—The contract relating to the supply to plaintiff's lessor of a given quantity of water for irrigation not having described any land to which a water right might attach, but having provided that the water could be utilized by said lessor on any lands that he might then own or lease or might thereafter own or lease in a given county, and having contained a provision against assignment without the written permission of the water company,

2. Construction of irrigation contracts to furnish water for consumers, note, **L. R. A.** 1916F, 257.

such provisions were indicative of the intention of the parties not to create an appurtenance to any land.

[6] ID.—PARTIAL ASSIGNEE—ACTION BASED ON—PARTIES.—A partial assignee has no legal standing to enforce a partial assignment against a debtor who has not consented thereto, but he has the right to bring all the parties, including his assignor, before the court and have his rights under the assignment determined.

[7] ID.—ESTOPPEL—DECEIT—PLEADING.—In this action by a lessee of property against a water company for damages for failure to deliver water for irrigation in accordance with the provisions of a conditional contract between the water company and plaintiff's lessor, to which contract plaintiff was not a party, there having been no allegation in the complaint that the water company made any statement to plaintiff respecting the water which was untrue, intending plaintiff to act thereon to his damage, or any showing of deceit or any element of fraud, actual or constructive, the complaint did not state a cause of action based upon the theory of estoppel. The mere fact that defendant had knowledge of the use of water by plaintiff and made no objection to it was not sufficient to estop defendant from exercising its rights under the contract with plaintiff's lessor.

[8] WATERS AND WATER RIGHTS—USE WITH LAND—APPURTENANCE.—The mere use of water with land for its benefit does not make the water appurtenant to said land under section 662 of the Civil Code. To make it appurtenant to land, the use must coexist with the ownership of the water right.

APPEAL from a judgment of the Superior Court of Sutter County. K. S. Mahon, Judge. Affirmed.

The facts are stated in the opinion of the court.

Robert H. Schwab for Appellant.

Thos. J. Straub, Wm. B. Bosley and Richard C. Belcher for Respondent.

BURNETT, J.—By his second amended complaint plaintiff sought to recover damages from defendant for the latter's alleged failure to deliver water for rice irrigation upon land which had been subleased by plaintiff from one Levisee. The complaint is in three counts, the last two incorporating by reference practically all the allegations of the first count. Indeed, the first count sets forth the basic facts of the obligation and breach of respondent, if any, and to this count

extended consideration may be given. It pleads a certain written contract between said Levisee and respondent, a copy of which is attached to the complaint and made a part thereof. By the terms of said contract respondent on the conditions therein stated agreed to sell and deliver not to exceed 600 miner's inches of water to Levisee for irrigating land owned by or leased to him in the county of Sutter, and to deliver such water at a fixed point designated in said contract, said water "to be used only by the consumer upon his said lands for the purpose of raising rice and beans thereon." No lands were described in the contract further than the specification that the water was to be used on "seven hundred and fifty acres of land owned by or leased to the consumer [Levisee] in said County of Sutter." The source from which said water was to be furnished was not mentioned and the contract was made unassignable by Levisee except by the written consent of respondent. It also appears that the water "to be furnished hereunder will first be utilized by the company for the generation of electric energy, which is the primary use to which the same will be put. Therefore anything herein contained to the contrary notwithstanding, it is agreed by and between the parties hereto that the company shall have the right, without incurring any liability to the consumer by reason thereof to discontinue delivering water hereunder whenever in the option of its engineer in charge such discontinuance is necessary in order to conserve the company's stored waters required for the generation of electric energy." The contract further provided that respondent was to commence the delivery of the water at the beginning of the irrigating season of 1919 at which time Levisee was to pay one-half of the sum due under the agreement and respondent reserved the right to cancel the contract or to discontinue the delivery of the water upon default of the consumer in making his payments as required.

After pleading said contract of January 20, 1919, the complaint alleged that on February 21, 1919, and April 3, 1919, Levisee leased two certain tracts of land from the owners thereof, and that on or about March 20, 1919, "Levisee sublet all of the above-described parcels of land to plaintiff . . . for the crop season of 1919, . . . for the planting and growing of rice, which facts the defendant well knew."

This is followed by an allegation that plaintiff entered into possession of said land and prepared it for the cultivation of rice and thereafter sowed rice thereon and "VIII. That it was upon the direct assurance of defendant that water would be supplied pursuant to said contract to said land that said C. W. Levisee entered into said leases herein referred to. That said water right was acquired for use upon said land and was necessary for its beneficial enjoyment and said land could not be so advantageously used without it. Said water right was an adjunct to said land and was used with it for its benefit up to the time when defendant ceased delivering water to said land as herein alleged."

As to this allegation it may be observed in passing that no "assurance" is claimed to have been made by defendant to *plaintiff*, but only to Levisee and it was simply to the effect that the water would be supplied "pursuant to said contract"; and, furthermore, the allegation that "said water right was an adjunct to said land" is obviously a mere conclusion, and was so regarded by the trial court. It is further alleged that at the proper time respondent began delivering the water and plaintiff applied it to the irrigation of said rice, and as a result thereof the rice crop was in a healthy and flourishing condition. "That no water was supplied to said lands prior to the time that this plaintiff took possession, and planted the same to rice and that at no time was any water supplied under said contracts to any other person than this plaintiff."

It further appears that at the time of the execution of said contract between respondent and Levisee, the former "was advised and well knew" that the latter's purpose was to sublease said premises and to install an irrigation system for the distribution of the water to be furnished by respondent and that said water was to be used upon the lands subleased to plaintiff, and it was upon the direct assurance of respondent that the water would be furnished according to the contract and in an amount adequate to irrigate said lands that said plaintiff and Levisee entered into said agreement of March 20, 1919, and it was upon the full belief and faith on the part of the parties to said agreement or lease that said lands would receive an adequate supply of water that said agreement of March 20, 1919, was executed and the land planted to rice and "the parties to said con-

tract treated and regarded" said water as being made "a part or appurtenant to said lands during said term and for said purposes aforesaid."

It is further alleged that plaintiff had no other means of irrigating said land, and that without a continuous supply of water sufficient to flood all of said lands from January 1st to November 1st to a depth of several inches it would be impossible to grow and mature a rice crop on said lands or any part thereof, which was well known to defendant; that respondent "without any notice to said plaintiff on or about the ninth day of July, 1919, willfully and wrongfully and in violation of the terms and provisions of its said contract aforesaid, shut off all water from said lands, turned and diverted its water supply in other directions and completely deprived said plaintiff and all of said lands from any further water for irrigation thereof."

Then follow allegations that said lands were referred to and contemplated by said contract, that Levisee duly performed all covenants and conditions imposed upon him by said contract, including the payment of all moneys required of him and that, as a consequence of "said defendant ceasing to furnish water, the said rice crop growing on said premises became a total loss, all to the damage of plaintiff in the sum of $165,025."

The second count adopts the foregoing allegations and makes the additional specific charge: "That on or about the twentieth day of March, 1919, said C. W. Levisee assigned to plaintiff such portions of the water as called for in and by virtue of said contract entered into between the defendant and C. W. Levisee as was necessary to irrigate said lands for the purpose of growing rice thereon."

The third count attempts to set forth an estoppel in the following language:

"That as herein alleged, said defendant well knew that said plaintiff could not raise rice on said lands without the applicatioin of said water as contracted for as herein stated. That knowing that said plaintiff had planted said lands to rice, furnished the said plaintiff with the necessary amount of water for the purpose of growing said rice. That at no time did said defendant object to or refuse to give plaintiff the necessary amount of water for raising said rice under and pursuant to said contracts

made and entered into by and between said C. W. Levisee and said defendant.

"That said plaintiff continued on with the cultivation of said rice during all of said times and that said defendant well knew said facts and raised no objection thereto.

"That said defendant is now estopped from taking the position that said plaintiff was not entitled to water under and by virtue of said contracts by reason of the facts as herein alleged."

To said second amended complaint and to each count thereof the defendant demurred upon the general ground, for a defect of parties in that said Levisee was not joined either as plaintiff or defendant, and separately that each count was uncertain, ambiguous, and unintelligible for various reasons that were carefully enumerated. The trial court sustained the demurrer in the following order: "The court being fully advised in the premises hereby orders that the demurrer to said second amended complaint, and to each alleged cause of action therein contained, be, and the same is hereby sustained without leave to amend." From the judgment entered thereupon in favor of defendant the appeal has been taken.

As to all these counts, it will not be disputed that no cause of action is stated against defendant unless it appears that some legal obligation was imposed upon said defendant in favor of plaintiff and that said obligation has been violated to the injury of the latter.

[1] According to the first count, whatever obligation existed is based upon and is created by the covenants and promises contained in said contract between respondent and said Levisee. No other duty than that arising from said contract is disclosed or even hinted at, and it must be conceded that to the terms of that contract, and to them alone, we must look for the character and measure of that obligation. When we do that, the result is not involved in any doubt or obscurity whatever. The obligation undertaken by respondent was to furnish water under certain conditions to said Levisee. Plaintiff was not a party to said contract and was not referred to in any manner. There is some pretense that the parties to said agreement had in view other persons and contemplated the irrigation of certain lands, but no attempt has been made to reform said contract nor has any

mistake or fraud been alleged or claimed. We must be guided, therefore, by the intention of the parties as expressed in said written instrument and conclude that said obligation was created in favor of Levisee and him alone, or one in privity with said contract. There is no claim, however, of privity. Indeed, appellant in his closing brief declares that "This action is predicated upon a tort and not a contract." and that "if this action was in any wise dependent upon a privity of contract we would not now be here." Furthermore, referring to said contract between Levisee and respondent, appellant says that he "is not a party to that contract and his rights are in no wise predicated thereon." If appellant is to be taken at his word it is plain that at least his first count reveals no cause of action for the reason that Levisee is the only person who could demand the performance of any duty under said contract, and also that no obligation from respondent to any one is revealed except by virtue of said contract.

In view of this claim and admission of appellant it is not necessary to consider any further the proposition that the duty and obligation arising out of a contract are due only to those with whom or for whom it is made, and that the application of this rule makes it plain that the covenants of respondent were in favor of Levisee and not of plaintiff. We may add, however, that this same contract was under investigation in the case of *Diggs* v. *Pacific Gas & Electric Co.*, 57 Cal. App. 57 [206 Pac. 765], and this question was considered and many authorities cited which illustrate the application of the principle.

In this connection we may emphasize the evident fact that the only pretense of a cause of action in the first count is based upon said contract between Levisee and respondent. Strike out the allegations in reference to said contract and it is manifest that there would be left no foundation for the claim of any liability on the part of respondent for the damage suffered by appellant. Certain legal conclusions, implying wrongdoing on its part, would remain, but no fact would appear to justify such conclusion. It matters not whether the action be regarded as on contract or in tort, since the only basis for any obligation of respondent is found in said contract, and, as we have seen, this did not create a duty in favor of appellant. But, as pointed out by respond-

ent, the first count contains all the characteristic features of an action on contract. It pleads said agreement between Levisee and respondent and attempts to establish appellant's privity therein. This is followed by the only allegation which purports to disclose any act or omission tending to charge respondent with liability for appellant's damages, as follows: "That said defendant without any notice to said plaintiff, on or about the ninth day of July, 1919, willfully and wrongfully *and in violation of the terms and provisions of its said contract, aforesaid,* shut off all water from said lands." Of course, the nature of the action must be determined from the allegations of the complaint. (*Busch* v. *Interborough etc. Co.,* 187 N. Y. 388 [10 Ann. Cas. 460, 80 N. E. 197]), and the allegations herein leave no uncertainty as to the proper interpretation of the cause of action.

[2] Another reason for holding the first count fatally defective is that the allegation of the breach of the water contract is insufficient. It is apparent that therein respondent agreed to furnish water upon certain conditions. It was expressly stipulated that it should first be used for the generation of electric energy which was declared to be its primary purpose. In fact, the fair interpretation of the covenants of the parties is that the company would furnish Levisee with water, if it had any left or was able to do so after using what was necessary for the development of the requisite electric energy. That circumstance or contingency, therefore, became an inseparable part of the promise, and in order to state a cause of action it would be necessary to show that such water was not needed for that purpose. In view of the absence of any allegation to that effect it will be presumed that respondent discontinued the delivery of the water for the reason that, in the opinion of its engineer, it was necessary to conserve it for the development of electric power. [3] Manifestly, the words "willfully and wrongfully and in violation of the terms and provisions of its said contract as aforesaid" must be disregarded as stating a mere conclusion (*Diggs* v. *Pacific Gas & Electric Co., supra*), and in view of the conditional promise, the mere failure to deliver the water cannot be deemed a breach of the contract.

In *Fisher* v. *Pearson,* 48 Cal. 473, the defendant agreed to pay all bills against a certain house or litigate the same be-

fore paying them if he deemed them unjust, and it was held to be insufficient to allege that he had failed to pay said bills and, furthermore, that having agreed to pay all bills for which the plaintiff had not made himself liable it was necessary in order to state a cause of action against him to recover such bills to allege that plaintiff had not made himself personally liable therefor.

In *Salisbury* v. *Shirley*, 53 Cal. 461, the lease in question provided, in effect, that during the last six months of the term the lessee would pay the monthly rent and all taxes, rates, and assessments which, during the six months, should be levied or assessed upon the demised premises, provided the net income from the property should be sufficient for said purposes, and it was held that in suing to recover the taxes levied during that period, it was incumbent upon the plaintiff to show in the complaint a breach of the covenant by an averment that the net income from the property during the six months was sufficient to pay the rent, taxes, and assessments.

In *Van Buskirk* v. *Kuhns*, 164 Cal. 472 [Ann. Cas. 1914B, 932, 44 L. R. A. (N. S.) 710, 129 Pac. 587], the defendant had agreed to pay a certain sum "when able" and plaintiff did not allege ability to pay. In holding the complaint insufficient the court said: "If the promise is conditional upon such ability, it is, as is said in *Rodgers* v. *Byers*, 127 Cal. 528 [60 Pac. 42], incumbent upon the plaintiff to *allege* and prove that the condition has been complied with. This is not, like the plea of the statute of limitations, matter of defense. It is a substantive part of the cause of action, and the burden of proof with respect to it is upon the plaintiff." The situation herein is similar and for that reason the allegation of breach is insufficient.

[4] The foregoing would seem to be a sufficient answer to the suggestion that a water right was created by said contract and that it became appurtenant to the land subleased by appellant. There was no conveyance of a water right, but the contract was executory and provided for the sale of so much water under conditions therein enumerated. It was not a sale but an agreement to sell, and respondent's obligation thereunder could be modified, suspended or fully canceled by the happening of the conditions mentioned in said contract. The situation was therefore entirely incon-

sistent with the view that a water right was thereby vested in Levisee. The principle is the same as though there had been an agreement to sell in the future upon certain conditions any other kind of property. Respondent engaged, "for a price, to transfer to another [Levisee] the title to a certain thing" (water) (sec. 1727, Civ. Code), but did not actually transfer the title as contemplated by a sale. (Sec. 1721, Civ. Code.)

[5]  Furthermore, the terms of said contract are inconsistent with the theory that any supposed water right was intended to be appurtenant to any land. In the first place no land was described to which such right might attach, and the water could be utilized by Levisee on any lands that he might then own or lease or might thereafter own or lease in Sutter County. The contract was also for the personal benefit of Levisee with a provision against assignment without the written permission of respondent. If it was intended to make a water right appurtenant to any tract of land there would be manifestly no reason in putting in this reservation. There was also no ditch or other fixed source mentioned in the contract to which any water right could attach as a servitude. The rights conferred upon Levisee were also too uncertain and indefinite to constitute a water right which could be held as a servitude on respondent's water system. These and other considerations are related by respondent as indicative of the purpose of the parties not to create an appurtenance to any land, and as we must be controlled by the intention of the parties as revealed by the contract itself rather than by the allegations of the complaint as to what the parties intended (*Barney v. Indiana R. Co.*, 157 Ind. 228 [61 N. E. 194]), we conclude that said suggested theory is entirely untenable.

Attention is directed to the decision of the supreme court in *Copeland* v. *Fairview Land etc. Co.*, 165 Cal. 148 [131 Pac. 119], wherein plaintiff, as successor of the Fairview Company, claimed a water right as against the Hemet Company through a contract made between said companies, wherein the former agreed to furnish the latter "water . . . upon the same terms and price it furnishes water to other persons . . . and will deliver such water into the pipes of said parties of the second part on their said lands at such points on the line of its pipe or pipes to which said parties

of the second part may lay their pipes." The supreme court said: "This clause does not operate to transfer to the Fairview Company any property right or interest in the supply of the Hemet Company. At most, it is a mere executory agreement for sale of water, to be effective at the option of the Fairview Company. As an agreement to sell an interest in property, it lacks the essential element of certainty as to the property which is to be delivered. It does not state the quantity of water to be furnished, nor give any means of determining that quantity. The precise act to be done in its performance is not clearly ascertainable. It is therefore incapable of enforcement against any specific property." The contract herein is equally executory, as we have seen, and equally indefinite as to the amount of water to be delivered since it depended upon the need of respondent for development of electric power. We deem it incredible that such contract can operate to vest a water right or create an appurtenance to land.

But, if by any rule of construction such effect could be given to it, then the interest was to continue only so long as respondent did not need the water for its own use and it was subject to termination when the supply became insufficient. We must assume, as before stated, in the absence of an allegation to the contrary, that respondent exercised the privilege reserved in said contract. Of course, plaintiff cannot claim that any water right was actually appurtenant to the land at the time he subleased it, since he alleges that the water had not then been supplied to said land, it being plain that water must be actually used by right with the land for its benefit to constitute an appurtenance. (Sec. 662, Civ. Code.) His claim must be that it became appurtenant thereafter by its use, basing his right upon said contract between Levisee and respondent, but this view we think cannot be maintained. Moreover, if any water right by virtue of said contract could and did become appurtenant to said land after the execution of said sublease, there is nothing in the complaint to show that it was transferred to plaintiff and we must assume that it remained vested in Levisee, with whom the contract was executed.

We may add that in our opinion some of the grounds of the special demurrer to this count were well taken, but we deem it unnecessary to consider them specifically.

The second count is based upon an alleged assignment, but it is to be observed that it does not purport to be an assignment of any water right but of an indefinite portion of the water called for by the original contract. The allegation can amount to nothing more than that there was a subcontract between plaintiff and Levisee whereby the latter agreed to furnish the former with water which he should receive from respondent. It is at least doubtful whether this allegation would show any privity between plaintiff and respondent under said contract. (5 Cor. Jur., sec. 6, p. 841; 3 Page on Contracts, p. 1933.) At any rate, the allegation is so uncertain as to be subject to the special demurrer on that ground. (*Berg* v. *Yakima Co.*, 83 Wash. 451 [L. R. A. 1915D, 292, 297, 145 Pac. 619].)

[6] Moreover, the allegation is, at best, only of a partial assignment, and the rule at law is that ''a partial assignee has no legal standing to enforce a partial assignment against a debtor who has not consented thereto.'' (3 Cal. Jur. 273; *Clancy* v. *Plover*, 107 Cal. 272 [40 Pac. 394]; *Buckeye Refining Co.* v. *Kelly*, 163 Cal. 8 [Ann. Cas. 1913E, 840, 124 Pac. 536].) In equity, though, the partial assignee has the right to bring all the parties before the court and have his rights under the assignment determined. (*Goldman* v. *Murray*, 164 Cal. 419 [129 Pac. 462].) If we apply the rule in equity it would seem that the plaintiff should have made Levisee a party defendant, and his failure to do so furnished a reason for sustaining the demurrer for misjoinder of parties.

Other grounds of special demurrer were enumerated but we pass them by, as we hold the foregoing sufficient to justify the court's action; besides, the general demurrer was good for the reason that, as in the first count, there was no sufficient allegation of the breach by respondent of its conditional promise to furnish water.

[7] As to the third count, based upon the theory of estoppel, the pleading is also fatally defective. The general elements of equitable estoppel have been often considered by the authorities and it would seem hardly necessary to notice them in detail. We may refer, though, to the following citations of respondent: Section 1962 of the Code of Civil Procedure; *Boggs* v. *Merced etc. Co.*, 14 Cal. 279; *Davis* v. *Davis*, 26 Cal. 38 [85 Am. Dec. 157]; *Lux* v. *Haggin*, 69 Cal.

255 [4 Pac. 919, 10 Pac. 674]; *Griffith* v. *Brown,* 76 Cal.
260 [18 Pac. 372]; *Watson* v. *Sutro,* 86 Cal. 500 [24 Pac.
172, 25 Pac. 74]; *Newhall* v. *Hatch,* 134 Cal. 269 [55
L. R. A. 673, 66 Pac. 266]; *Nilson* v. *Sarment,* 153 Cal. 524
[126 Am. St. Rep. 91, 96 Pac. 315]; *Bias* v. *Reed,* 169 Cal.
33 [145 Pac. 516]; *Treat* v. *Treat,* 170 Cal. 329 [150 Pac.
53, 57]; *Staniford* v. *Trombly,* 181 Cal. 372 [186 Pac. 599];
2 Pomeroy's Equity Jurisprudence, 3d ed., sec. 805. As in-
dicated by respondent, to constitute an estoppel within the
well-established meaning of that term, respondent must have
made some statement to plaintiff respecting the water in
question or done something implying a statement, which was
untrue, intending plaintiff to act thereon to his damage.
(1 Wiel on Water Rights, 3d ed., sec. 593; Bigelow on Es-
toppel, 6th ed., p. 774; *Diggs* v. *Pacific Gas. & Elec. Co.,*
*supra.*) Nothing of the kind appears in the complaint.
No false statement nor statement of any kind by respond-
ent, no concealment or conduct amounting to false statement
or concealment appears. There is no allegation of any in-
tention upon the part of respondent to deceive or mislead
appellant, or that the latter in taking a sublease, or in
planting his crop of rice relied upon any statement or con-
duct of respondent. In brief, no showing of deceit or any
element of fraud, actual or constructive, is disclosed, and
manifestly the doctrine of estoppel cannot be grounded upon
the single fact that respondent had knowledge of the use of
the water by appellant and made no objection to it. Ap-
pellant would naturally suppose that the use was in ac-
cordance with and with knowledge of the terms of said con-
tract with Levisee. Indeed, it is alleged to have been in
accordance with said contract. It would be a singular doc-
trine that one could not insist upon his rights under a con-
tract because of his knowledge that another was seeking
to appropriate benefits which he claimed thereunder.

The third count can have no greater force than if it al-
leged specifically that defendant had knowledge that plain-
tiff was using the water and claiming the right to use it as
against respondent under the terms of said original contract.
Respondent is not responsible if appellant misconceived its
effect, and there is nothing to show that it has not the
legal right to insist upon its provisions.

Instances, no doubt, occur wherein the use of property belonging to another with the knowledge and acquiescence of the owner gives rise to the principle of estoppel, but it can have no application to a case like this where the use is claimed to be in accordance with and in reliance upon the terms of a definite contract.

The cases cited by appellant in this connection involve a different situation and were no doubt correctly decided. For instance in *Seymour* v. *Oelrichs*, 156 Cal. 782 [134 Am. St. Rep. 154, 106 Pac. 88], it was held inequitable to permit defendants to rely upon the statute of frauds, since by their conduct they had induced plaintiff to believe, and to act upon the belief, that they would enter into a written contract of employment. The gist of the decision as to estoppel is stated in the syllabus as follows: ''Where the defendants verbally promised the plaintiff, who was at the time occupying practically a life position in a police department, that if he would surrender his position and enter their employ they would engage him for a period of ten years at a stated salary and would give him a written contract embodying the terms of his employment at a stated future time, and the plaintiff in full reliance on such promise, irrevocably surrendered his position and entered the defendant's employ, such promise in the eye of equity, constituted a binding contract, the subsequent repudiation of which by the defendants would constitute such manifest fraud as would estop the defendants from asserting the invalidity of the oral contract.'' It was declared that the conduct of defendants involved ''fraud and falsehood'' and therefore could not be tolerated by a court of equity.

Other objections were raised by the demurrer, for instance, that the allegation that respondent supplied water to the subleased lands in accordance with the contract between Levisee and respondent is inconsistent with its provisions specifying that the water was to be delivered to a point in Auburn Ravine (which was not upon the land subleased to plaintiff), thence to be conveyed by Levisee in his own aqueducts to the points where he desired to use it, and that said count negatives the claim that plaintiff was injured by any act of respondent inasmuch as it alleges that at no time did respondent refuse to give appellant the necessary amount of water for raising rice under and pursuant to said contract.

There is merit in these and other objections made by respondent, but as this count is manifestly based upon an inadequate and invalid claim of estoppel, the other considerations become unimportant.

[8] Finally, appellant is mistaken in his claim that, under said section 662 of the Civil Code, the mere use of water with land for its benefit makes the water appurtenant to said land. The section provides that "a thing is deemed to be incidental or appurtenant to land when it is by *right* used with the land for its benefit," etc. It would be subversive of the constitutional privilege of property ownership to hold that a person may *without right* use upon his land water belonging to another and by such use make it appurtenant to his land. Manifestly, the use must coexist with the ownership of the water right to make it appurtenant to his land. There is nothing in the complaint to show that plaintiff owned any water right which he could assert against respondent, and the use, therefore, of said water could not, and did not, constitute it an appurtenance to his land.

We feel satisfied that appellant has not shown by his complaint any violation of duty owed to him by respondent and the judgment is therefore affirmed.

Hart, J., and Finch, P. J., concurred.