[Civ. No. 15665.  First Dist., Div. One.  Feb. 17, 1954.]

F. RAY SHUTES, Appellant, v. LYLE R. CHENEY et al., Respondents.

Allan, Miller & Groezinger for Appellant.

Marvin Sherwin and Milo Ayer for Respondents.

FINLEY, J. pro tem.*—This is an appeal from a judgment entered in favor of respondents following the sustaining of a demurrer to appellant's third amended complaint which appellant thereafter declined to amend.

As set forth in the complaint, the facts appear quite complicated. In their bare essentials, they are as follows: On August 25, 1936, W. J. Dubil and E. J. Hubik obtained a United States patent for the preparation of meat to be sold under the trade name of "Chip Steaks." Some time prior to November 28, 1938, Dubil and Hubik granted to W. T. Carpenter exclusive authority to manufacture, sell and dispose of this commodity. W. T. Carpenter assigned this right to W. L. Perry and J. A. Carpenter, who in turn by agreement dated November 28, 1938, granted to appellant the right to buy "Chip Steaks" and an exclusive right to sell and deliver said product in San Joaquin County, California.

On February 7, 1939, W. L. Perry and J. A. Carpenter assigned all of their rights to manufacture, sell and dispose of "Chip Steaks" to C. V. Jacky, and on March 5, 1940, C. V. Jacky by agreement wherein it is stated that he is "doing business under the firm name and style of CHIP STEAK COMPANY OF SAN FRANCISCO," granted to appellant the exclusive

*Assigned by Chairman of Judicial Council.

right to buy "Chip Steaks" for resale and delivery within the Counties of Sacramento, Yolo, and part of Solano.

Sometime prior to September 19, 1942, Dubil and Hubik cancelled their agreement with W. T. Carpenter, under whom W. L. Perry, J. A. Carpenter, and in turn C. V. Jacky and appellant claimed, and on September 19, 1942, entered into a new agreement directly with C. V. Jacky. On December 1, 1945, this latter agreement was cancelled and Dubil, Hubik and Jacky entered into a new agreement. It is not so stated in the complaint but apparently somewhere along the way Jacky had ceased to do business under the fictitious name "Chip Steak Company of San Francisco" and had turned it into a corporation, for shortly after December 1, 1945, Jacky's agreement with Dubil and Hubik was assigned by him to the "CHIP STEAK COMPANY OF SAN FRANCISCO," a corporation, and on November 16, 1946, this corporation assigned the contract to respondent, "CHENEY BROS. CHIP STEAK COMPANY," a copartnership. Only three paragraphs of this assignment which contains all of the express undertakings by respondent are relevant here. They read as follows:

(1) "WHEREAS, seller and C. V. JACKY have heretofore entered into certain contracts for the distribution of such Chip Steaks in portions of such territory with the following persons; i. e." Ray Shutes (among others.)

(2) "Seller hereby releases and transfers to buyer the *sole* right to manufacture and *distribute* Chip Steaks in the State of California and to make use of the trade name of 'Chip Steaks' in said State and agrees that it will not compete with buyer in the manufacture or sale of such Chip Steaks in the said State during such time as buyer or buyer's successor in interest may be engaged in the manufacture or distribution of such product in said territory." (Emphasis added.)

(4) "IT IS FURTHER AGREED that buyer accepts the transfer of the privileges of said agreement subject to all the conditions thereof and will preserve seller harmless from any claim of violation of said agreement by buyer or any breach of agreements heretofore made between *buyer* and the persons named in the third paragraph of this agreement." (Emphasis added.)

From the above it will be noted that appellant had two separate contracts for the sale and distribution of Chip Steaks, both of which were operative and appellant's rights thereunder recognized by respondent's assignor at the time the

assignment was made. The first was with W. L. Perry and J. A. Carpenter dated November 28, 1938, and the second was with C. V. Jacky dated March 5, 1940. The first granted appellant his rights thereunder ''during the life of said patent,'' and further provided that it ''is binding upon and shall inure to the successors and assigns of Licensor and upon the written consent of Licensor, to the successors and assigns of Licensee.'' In the second contract rights given therein were to extend ''during the life of said patent, or as long as first party has the right to manufacture said product within the territory herein designated. . . .'' It also provides: ''This agreement is to bind the successors, heirs, executors, administrators and assigns of the respective parties hereto.''

The complaint is in two causes of action. In the first appellant relies upon his agreement entered into on November 28, 1938, with Perry and Carpenter, and in the second he relies upon his agreement with C. V. Jacky dated March 5, 1940.

In the first cause of action appellant alleges that he ''enjoyed all of the rights and benefits granted to him in his agreement of November 28th, 1938 . . . without interruption, to November 15th, 1946,'' and that although defendants at all times knew that the Perry and Carpenter agreement was still in full force and effect, they refused to be bound thereby after succeeding to the rights of the ''CHIP STEAK COMPANY OF SAN FRANCISCO.''

In the second cause of action appellant alleges: ''That although defendants at all times knew that the agreement between plaintiff and C. V. JACKY . . . was in full force and effect, nevertheless said defendants after succeeding to the rights of said CHIP STEAK COMPANY OF SAN FRANCISCO have refused to recognize said agreement and have notified plaintiff that they refuse to be bound thereby.''

Appellant seeks damages and an injunction restraining respondents ''from soliciting for sale or selling the product known as 'Chip Steaks' '' in the territory in which he claims this exclusive right.

Respondents' demurrer is both general and special. A number of items of claimed uncertainty, ambiguity and unintelligibility are specified. In addition to the general claim that neither count states a cause of action the demurrer further urges (1) ''That the . . . court has no jurisdiction of the subject'' matter of either cause of action, and (2) ''That the plaintiff has not legal capacity to sue.''

The two latter points will be first discussed, for if either be well taken we would not have to go further.

Respondents' claim that a state court has no jurisdiction of the subject matter is apparently predicated upon the premise that the action involves a dispute concerning patent rights over which the federal courts have jurisdiction. But such is not the case. Appellant is not questioning patent rights or infringements or the validity of the alleged patent. From all that can be gathered from the complaint the rights claimed by both sides assume the validity of the patent and depend upon it for their existence. ██ A state court may construe and enforce contracts relating to patents. (*Pendleton* v. *Ferguson,* 15 Cal.2d 319 [101 P.2d 81, 688].)

Although the point that plaintiff has not legal capacity to sue is raised in the demurrer, no reason is stated, and respondents do not discuss the point in their brief. We therefore deem it to be not well taken and therefore abandoned.

The main point to be decided is raised by the general demurrer. ██ The question is whether respondents are under any legal obligation to appellant on account of respondents' accepting an assignment of and exercising the *sole* right to manufacture and *distribute* Chip Steaks in the State of California under the condition that in the assignment itself it was recited that respondents' assignor had outstanding contracts with appellant permitting appellant to distribute "Chip Steaks" in *parts* of California and where those contracts contained provisions purporting to bind assigns, but where these contracts were not assigned to respondents and where respondents entered into no express undertaking concerning them.

If under these circumstances respondents are under a legal duty to appellant it is because respondents' assignor could not by assigning to respondents the *sole* right to distribute "Chip Steaks" in California divest appellant of a previous license in good standing to buy "Chip Steaks" and to distribute them in specified areas of California or that by accepting the assignment with knowledge respondents impliedly recognized the rights claimed by appellant and took subject to these rights and the obligations owed by their assignor to appellant, thus constituting appellant *pro tanto* a third party beneficiary.

From our examination of the contracts to which appellant is a party we find nothing which could be interpreted as creating in appellant or conveying to him an interest in the master license granted by the patent owners any more than an agreement by an owner to furnish water under certain

conditions would amount to a conveyance of an interest in the owner's water right. In *Gause* v. *Pacific Gas & Elec. Co.*, 60 Cal.App. 360 [212 P. 922], (wherein the court held that the complaint did not state a cause of action) the Pacific Gas and Electric Company was alleged to have entered into a written contract with one Levisee to sell and deliver to him water for the irrigation of certain rice land. It was alleged in the complaint that "Levisee sublet all of the above-described parcels of land to plaintiff . . . for the crop season of 1919, . . . for the planting and growing of rice, which facts the defendant well knew."

Plaintiff in that case claimed that the agreement to furnish water to the land conveyed an interest in the water right which became appurtenant to the land in question. In passing upon the point the court said, at page 368: "There was no conveyance of a water right, but the contract was executory and provided for the sale of so much water under conditions therein enumerated. It was not a sale but an agreement to sell, and respondent's obligation thereunder could be modified, suspended or fully cancelled by the happening of the conditions mentioned in said contract. The situation was therefore entirely inconsistent with the view that a water right was thereby vested in Levisee."

By analogy we believe it may properly be said here that the agreement between Jacky and the patentors of "Chip Steaks" did not create in Jacky and his assignee an interest in the patent rights but merely a license to enjoy certain privileges thereunder, a right in personam, a part of which privilege he delegated to appellant also as a right in personam.

Appropriate also to this case is this further language in *Gause* v. *Pacific Gas & Elec. Co.*, *supra*, 60 Cal.App. 360, at page 365: "The obligation undertaken by respondent was to furnish water under certain conditions to said Levisee. Plaintiff was not a party to said contract and was not referred to in any manner. There is some pretense that the parties to said agreement had in view other persons and contemplated the irrigation of certain lands, but no attempt has been made to reform said contract nor has any mistake or fraud been alleged or claimed. We must be guided, therefore, by the intention of the parties as expressed in said written instrument and conclude that said obligation was created in favor of Levisee and him alone, or one in privity with said contract. There is no claim, however, of privity."

It is true that in the instant case appellant was mentioned in the agreement of assignment to respondents, and the word "mention" about covers it. There was no undertaking of any kind for plaintiff's protection or benefit.

Also, the language in *Diggs* v. *Pacific Gas & Elec. Co.*, 57 Cal.App. 57 [206 P. 765], seems applicable here. The court there states, at pages 63 and 64: "We are dealing with the question whether a person not a party to a contract may maintain an action for its violation because he may have indirectly suffered detriment thereby or would have been benefited if the contract had been observed by the parties thereto. . . . The rule is that there must be privity and that remote damages to third parties cannot be recovered."

It is the law, of course, that under the provisions of section 1559 of the Civil Code, a contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it. But in deciding whether a promise inures to the benefit of a third party the test is whether an intent to so benefit the third person appears from the terms of the contract. (*Le Ballister* v. *Redwood Theaters, Inc.*, 1 Cal.App.2d 447 [36 P.2d 827].) The rule is well established that in order to sustain an action an intent to make the obligation inure to the benefit of the third party must have been clearly manifested by the contracting parties. (*Wilson* v. *Shea*, 29 Cal.App. 788 [157 P. 543].) Where a contract incidentally benefits a third person but is not expressly made for his benefit, he cannot recover thereon. (*Chung Kee* v. *Davidson*, 73 Cal. 522 [15 P. 100]; *Buckley* v. *Gray*, 110 Cal. 339 [42 P. 900, 52 Am.St.Rep. 88, 31 L.R.A. 862]; *Smith* v. *Anglo-California Trust Co.*, 205 Cal. 496 [271 P. 898]; *Ferguson* v. *Marsh*, 37 Cal.App. 482 [174 P. 678].)

The cases of *Lisenby* v. *Newton*, 120 Cal. 571 [52 P. 813, 65 Am.St.Rep. 203], and *Wilson* v. *Beazley*, 186 Cal. 437 [199 P. 772], both involve assignments of contracts to buy real property. In both cases it was held that the assignee could not force a conveyance without paying but on the other hand he could not be compelled to pay the purchase price as there was no assumption of this obligation.

The case of *Armstrong Co.* v. *Shell Co. of Cal.*, 98 Cal.App. 769 [277 P. 887], involved the assignment of a royalty contract for the use of a patent. The contract was by its terms made binding upon the assigns of the licensee. The court there said, at page 775: "The mere assignment by the purchaser of its rights under an executory contract does not

cast upon the assignee any of the personal liabilities imposed by the contract upon the assignor, even though the contract provides that its stipulations are to apply and bind the assigns of the respective parties, unless the assignee expressly obligates himself to perform the covenants binding upon the assignor or recognizes his personal obligation to the vendor or claims or accepts the benefits of a full performance of the contract.'' (See, also, *Bryant* v. *Smith*, 57 Cal.App. 214 [206 P. 1025].)

If respondents expressly assumed any responsibility toward appellant it must be through some provision in the contract of assignment, and there is none. Respondents accepted no benefits from appellant nor sought any under his agreements. Appellant alleges in his complaint that after the assignment respondents refused to recognize his contracts or to be bound thereby. The assignment was obviously not made for the benefit of appellant as a third party beneficiary. According to the authorities discussed above, respondents would not even be liable, without express undertaking, to the patent owners for the obligations owing by their assignors, and this is so even in view of the fact that the very contract assigned contains provisions purporting to bind the assigns of the respective parties. This being the case, then certainly there would be no personal responsibility to strangers to the assigned contract without an express undertaking to that effect, and as stated above there is none. No fiduciary relationship of any kind existed between respondents and appellant. Appellant's cause of action, if any, lay against Jacky or the ''CHIP STEAK COMPANY OF SAN FRANCISCO,'' and not respondents. (*Bryant* v. *Smith, supra,* 57 Cal.App. 214.)

Respondents' contention that this appeal should have been dismissed as frivolous is without merit. Under the provisions of section 583 of the Code of Civil Procedure appellant would have three years after the filing of the remittitur with the clerk of the trial court within which to bring the action to trial.

We hold that appellant has failed to state a cause of action against respondents in either count of his complaint and on the facts as they appear cannot do so.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.