[Civ. No. 25890. Second Dist., Div. Four. June 6, 1962.]

CERFEE J. LUIS et al., Plaintiffs and Appellants, v. ORCUTT TOWN WATER COMPANY et al., Defendants and Respondents.

434

Barrett, Lucey & Harkleroad and Dudley Harkleroad for Plaintiffs and Appellants.

Archbald & Halde, Malcolm Archbald, Schramm, Raddue & Seed and Edward W. Schramm for Defendants and Respondents.

BALTHIS, J.—This action was brought to recover damages resulting from a fire which destroyed the mercantile store of plaintiff Luis in the Town of Orcutt. The second amended complaint (hereinafter referred to as the "complaint") contains six causes of action; three for plaintiff Luis and three for plaintiff Great American Insurance Company (New York); the term "plaintiff" as used in the singular hereafter refers to plaintiff Luis. The claims of the insurance company

are derivative from plaintiff Luis and are based upon subrogation by reason of the company's having paid a portion of the loss. The liability of defendants is alleged to be both contractual and tortious.

A demurrer to plaintiffs' complaint was sustained without leave to amend and, after judgment was entered for defendants, plaintiffs appeal. The question presented by the appeal is whether the complaint states facts sufficient to constitute a cause of action against defendants; defendant Union Oil Company of California is referred to herein as "Union" and defendant Orcutt Town Water Company is referred to as "Water Company."

The allegations of the first cause of action of the complaint may be summarized as follows:

Prior to 1940 Union owned and operated a private water system in the Town of Orcutt which also supplied water to third persons for domestic and commercial purposes. The portion of the water system supplying water to third persons in the Town of Orcutt was acquired in 1940 by Water Company with permission of the Public Utilities Commission.

The complaint refers to two contracts between Union and Water Company. The principal agreement provides that Union will supply Water Company with such quantities of water from Union's wells located at Union's property adjoining the Town of Orcutt as Water Company may require for distribution to domestic and commercial consumers within the Town of Orcutt; that said water is to be delivered to Water Company's facilities at Union's Orcutt pump station and that Water Company will maintain and operate the pumps and lines for receiving and transporting the water to its own storage facilities.

Paragraph 2 of the principal agreement provides in part as follows: "Union further agrees to furnish water to Water Company's Orcutt town storage tank from Union's separate high pressure line in case of emergency when Water Company is prevented from or is unable to take water at its connection at Union's Orcutt property."

The contract further provides in paragraph 3 as follows for the amount to be paid for the water: "It is agreed that the water supplied through the connection at the Orcutt pump station shall be charged and paid for at the rate of Eight Cents (8c) per hundred cubic feet, and that any water supplied through said *emergency connection* shall be at an addi-

tional charge of Sixteen Cents (16c) per hundred cubic feet over and above the rate above set forth." (Emphasis added.)

The contract states the intention of the parties that the charges for the water delivered shall be such as will defray Union's cost of producing and delivering the water and that such charges should be subject to readjustment and subject to approval of the Public Utilities Commission.

The second agreement referred to in the complaint provides generally that Union shall supply Water Company with personnel and proper office space and facilities in the Town of Orcutt and for the charges to be made for these items.

Upon information and belief it is alleged that all of the stock of Water Company is owned by Union, and Water Company is managed and operated by Union so that in such regard it is the *alter ego* of Union.

The complaint also states that a fire department is maintained in the Town of Orcutt as a volunteer fire department requiring regular annual taxes to be collected by the county. Plaintiff Luis is a resident and taxpayer of Orcutt and was and is a customer of Water Company.

It is further alleged that as a matter of practice and conduct on the part of defendants, the word "emergency" contained in the principal agreement above mentioned was recognized and acknowledged to include emergency by fire and it was further "recognized and acknowledged that the practical method of supplying additional water in the case of emergency by fire would be to open a high pressure valve which existed in the vicinity of a fire hydrant maintained for fire purposes in the vicinity of the Orcutt pump station and which would provide an increase in water from a two inch to a six inch water flow under pressure when said valve was opened." (Complaint, par. VIII.) Defendants advised the local fire officials that in the event water was needed to combat a fire, defendants would open said high-pressure valve at once, but that defendants did not advise the local fire authorities as to the location of said valve. Defendants communicated the various facts to other interested persons including plaintiff.

The complaint then states that plaintiff owned and operated a store building and mercantile business in the Town of Orcutt; that on November 10, 1951, the building and its contents were destroyed by fire; that at the time of fire urgent demand was made upon defendants to supply water to combat the fire but defendants "failed to promptly and immediately operate the valve and delayed in doing so for a highly unrea-

sonable length of time exceeding one hour,'' and that as a result ''plaintiff's building and contents were totally destroyed'' (complaint, par. X); that defendants breached the contract and plaintiff has suffered damages in the sum of $140,000.

In the second cause of action after repeating certain allegations of the first cause of action, it is alleged that defendants were negligent in the performance of their contractual duties and obligations to provide water and that such negligence was the proximate and direct cause of plaintiff's loss of property.

In the third cause of action it is alleged that defendants voluntarily assumed an obligation ''that in the event of emergency by fire a high pressure valve which existed in the vicinity of a fire hydrant maintained for fire purposes in the vicinity of the Orcutt pump station, and which would provide an increase in water from a two inch to a six inch water flow under pressure when said valve was opened, would be opened immediately upon the occurrence of any such emergency by fire.'' (Complaint, par. II.) The complaint states that this assumption of obligation by defendants was made known by means of communications to the local officials of the fire district and to other interested persons including plaintiff. One of the individuals responsible for turning on the valve was an employee of Union; the other individual was responsible to both defendants and was unavailable at the time of fire because he was on vacation; no other provision for emergency by fire was made by either defendant or the local fire authorities or by plaintiff; by reason of the failure to provide water for such emergency by fire and because of such negligence plaintiff suffered the property losses mentioned.

The fourth, fifth and sixth causes of action are brought by plaintiff insurance company and are substantially similar to the first, second and third causes of action respectively and it is not necessary to repeat them here.

The rule is well established in California that a water company is not liable to one of its consumers for failure to furnish water (or at sufficient pressure) for fire protection unless an express contract for that purpose has been made. ■■ Liability for loss resulting from fire is not an incident of the ordinary relation of water distributor and consumer; it can only be created by an express private contract whereby the water company agreed to furnish water as a protection against fire. It is only where the contract calls for water

service for the purposes of extinguishing fires that loss of the premises by fire may be compensated in damages as having been reasonably supposed to have been within the contemplation of the parties.

The reasons for the above rule are stated in one of the leading cases (*Niehaus Bros. Co.* v. *Contra Costa etc. Water Co.* (1911) 159 Cal. 305, 318-319 [113 P. 375, 36 L.R.A. N.S. 1045], as follows:

"Applying the reasoning of these authorities to the relation between the company and the consumer here . . . no obligation to furnish water for fire protection is implied, nor can it be said to exist in the absence of an express contract. Keeping in mind . . . that the primary business of a water company is to furnish water as a commodity, and not to extinguish fires, and further recognizing that under the law of this state the defendant is a *quasi* public corporation engaged in the exercise of a public use and discharging a public duty which would otherwise devolve upon the municipality itself and furnishing water at rates fixed exclusively by the municipality, it would appear plain that it was never contemplated that from the simple relation of distributor and consumer the former undertook to assume liability for failure to furnish water to extinguish fires. In the nature of things the compensation fixed by the municipality has no relation to the assumption of any such liability; that compensation is based on the expense of furnishing water simply as a commodity; liability for destruction of premises to which the company may be required to supply water was not taken into consideration in fixing the rate, nor, we apprehend, was it even thought that any such liability could be imposed by the ordinance, or was to be assumed by the company in doing so."

The court further points out that if a water company were to be held liable for damages resulting from a failure on the part of the water company to supply sufficient water at sufficient pressure to extinguish a fire, it would place upon the water company a staggering insurance burden not covered by the rates charged. The court said at page 321:

"It is common knowledge that, notably in large manufacturing centers within municipalities, hydrants are installed on the premises and connected with a public water company's system as a precautionary measure in case of fire. This is particularly true when the enterprise in which the owners are engaged is more readily exposed to danger from fire,

either from the inflammable material which is being used in the factories, or on account of the proximity of others which are of that character. The various factories or mills in which hydrants are placed and connections with the public water system made may represent property worth millions of dollars which is subject to danger of destruction by fire and where the water to be used should fire arise is not furnished under any express contract between the parties but is being supplied simply under the ordinance rates as to water and hydrant charges established by law. Of course, if the position of the respondent is correct, then in all these instances a public water company is assuming liability practically as an insurer of millions of dollars worth of property upon which, either from the nature of the business conducted on the premises or the locality in which the property is situated, an insurance company itself would not think of assuming the risk.''

For further statement or application of the rule see *Hunt Bros. Co.* v. *San Lorenzo etc. Co.* (1906) 150 Cal. 51 [87 P. 1093, 7 L.R.A. N.S. 913]; *City of San Leandro* v. *Railroad Co.* (1920) 183 Cal. 229, 233-234 [191 P. 1]; *Gelhaus* v. *Nevada Irrigation Dist.* (1955) 43 Cal.2d 779, 782 [278 P.2d 689]; *Luning Mineral Products Co.* v. *East Bay Water Co.* (1924) 70 Cal.App. 94 [232 P. 721]; 53 California Jurisprudence 2d section 30, pages 34-36; 56 American Jurisprudence 969; Note 62 American Law Reports 1205.

A municipality may not recover damages against a water company for failure to furnish water under sufficient pressure for fire protection (*City of Ukiah* v. *Ukiah Water & Imp. Co.* (1904) 142 Cal. 173 [75 P. 773, 100 Am.St.Rep. 107, 64 L.R.A. 231]).

It is helpful to examine the pertinent provisions of the principal contract and to analyze the relationships involved in the instant case.

First to be considered is the fact that there is no contract involved here to which plaintiff Luis is a party. The two agreements referred to in the complaint are between Union and Water Company; the contracts are essentially between the water producer and the water distributor and have nothing to do with the consumer. They refer to the supply and sale of water for ''domestic and commercial purposes,'' not for fire purposes. The contracts are not the type or classification referred to in the exception to the general rule, that is, an express private contract by a consumer with a water com-

pany to obtain water service for a particular purpose, fire protection (*Niehaus Bros. Co.* v. *Contra Costa etc. Co., supra,* 159 Cal. 305, 312-313).

Further, plaintiff is not an *express* beneficiary under the principal contract which as pointed out above, is between water supplier and water distributor.

Section 1559, Civil Code, reads: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." This code section has been explained and interpreted by a large number of cases but the most concise statement of the law is found in the Restatement of Contracts, section 133, where third-party beneficiaries are classified as follows:

A person is a donee beneficiary:

"(a) . . . if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary." A person is a creditor beneficiary:

"(b) . . . if no purpose to make a gift appears from the terms of the promise in view of the accompanying circumstances and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary, or a right of the beneficiary against the promisee which has been barred by the Statute of Limitations or by a discharge in bankruptcy, or which is unenforceable because of the Statute of Frauds."

A person is an incidental beneficiary:

"(c) . . . if neither the facts stated in Clause (a) nor those stated in Clause (b) exist."

Although Civil Code section 1559 makes no reference to the different types of beneficiaries, the California cases generally rely on these Restatement classifications (*Hartman Ranch Co.* v. *Associated Oil Co.* (1937) 10 Cal.2d 232, 244 [73 P.2d 1163]).

Under the foregoing rules a plaintiff must plead a contract which was made expressly for his benefit and one in which it clearly appears that he was a beneficiary, e.g., *Steinberg* v. *Buchman* (1946) 73 Cal.App.2d 605, 609 [167 P.2d 207]. The fortuitous fact that he may have suffered detriment by reason of the nonperformance of the contract does not give

him a cause of action. (*Shutes* v. *Cheney* (1954) 123 Cal.App.
2d 256, 262 [266 P.2d 902].) The test in deciding
whether a contract inures to the benefit of a third person is
whether an intent to so benefit the third person appears from
the terms of the agreement (*Le Ballister* v. *Redwood Theatres,
Inc.* (1934) 1 Cal.App.2d 447, 448-449 [36 P.2d 827]).
Where a claim is made that the parties to an agreement
intended to benefit a third party, but no attempt is made to
reform the contract nor has any mistake or fraud been
alleged, the courts must be guided by the terms of the written
instrument (*Shutes* v. *Cheney, supra,* 123 Cal.App.2d 256,
261).

 We hold that the principal contract involved here, and
relied upon by plaintiff for his first and second causes of
action, was not made expressly for the benefit of plaintiff;
the terms of such agreement do not indicate that the parties
to it contemplated or intended expressly to benefit plaintiff
Luis, or to protect him against fire losses, or to entitle him
to sue upon such agreement. Plaintiff could only be considered
a most remote and incidental beneficiary in a relationship not
recognized by the law.

 Plaintiff further contends that the reference to
"emergency" in paragraph 2 of the principal agreement is
ambiguous and that the conduct of defendants as shown by
their communications to interested parties establishes that the
word "emergency" as used in the contract included "emer-
gency by fire." However, this alleged interpretation is not
supported or justified by the plain reading of the contract.

Having in mind that the contract is between a water sup-
plier and water distributor, the emergency referred to is
spelled out specifically and clearly. The provision in question
upon which plaintiff must rely is again set forth: "Union fur-
ther agrees to furnish water to Water Company's Orcutt town
storage tank from Union's separate high pressure line in case
of emergency when Water Company is prevented from or is
unable to take water at its connection at Union's Orcutt
property."

The emergency referred to in the contract exists only when
Water Company is unable to take water at its connection with
Union's Orcutt property; it has nothing to do with fire.
Paragraph 3 of the contract set forth previously, also shows
that *emergency* refers to the *connection,* not fire.

Plaintiff asserts that "actual conduct of the parties" must
be looked to for "purposes of determining the true meaning of

the contract." It is basic contract law that the intention of the parties to a written contract is to be ascertained from the writing alone.

It is only where the language of the contract is ambiguous and uncertain that resort may be had to anything outside of the language of the contract for the purpose of determining the intention of the parties. (*United Iron Works* v. *Outer Harbor etc. Co.* (1914) 168 Cal. 81, 84 [141 P. 917].) A court will only consider the conduct of the parties in order to arrive at their contractual intention when the terms of the contract are uncertain or ambiguous. (*Purdy* v. *Buffums, Inc.* (1928) 95 Cal.App. 299, 303 [272 P. 770]; *Bettis Rubber Co.* v. *Kleaver* (1951) 104 Cal.App.2d 821, 826 [233 P.2d 82]; *Petersen* v. *Ridenour* (1955) 135 Cal.App.2d 720 [287 P.2d 848].)

Upon analysis it will be seen that the conduct and practice of defendants alleged in the complaint has nothing to do with the contract. It is pleaded that defendants told the fire officials that if there was a fire emergency they would open a certain high-pressure valve. However, this statement to the fire officials is not related to the contract between Union and Water Company; the contract relates to supply of water to the Water Company, not to the fire lines of the Town of Orcutt, or to the fire department of said town. In the contract itself there is no reference to emergency by fire, to supplying additional water, to a high-pressure valve in the vicinity of a fire hydrant; there was only an agreement that in the event Water Company was prevented from or was unable to take water at its ordinary connection, Union would furnish water to the Water Company's storage tank from a different connection, i.e., Union's separate high-pressure line.

The allegation in the complaint that Water Company is the *alter ego* of Union does not assist plaintiff. First, the *alter ego* theory as pleaded is ineffective. The pleading is that the Water Company was owned, managed and operated by Union and the conclusion is then stated that Water Company was therefore the *alter ego* of Union. It is not true that any wholly owned subsidiary is necessarily the *alter ego* of the parent corporation. The corporate entity of the wholly owned subsidiary will be disregarded only when recognition of the separate entities of parent and subsidiary would produce fraud or injustice. (*Marr* v. *Postal Union Life Ins. Co.* (1940) 40 Cal.App.2d 673, 681-682 [105 P.2d 649].) Bad faith in one form or another must be shown before the court

444

may disregard the fiction of separate corporate existence (*Chiarello* v. *Axelson* (1938) 25 Cal.App.2d 157, 160 [76 P.2d 731]; *Marr* v. *Postal Union Life Ins. Co., supra;* see 12 Cal. Jur.2d p. 605).

Secondly, if the *alter ego* theory were pleaded effectively and if the doctrine is applied, it pleads the contract upon which plaintiff relies out of existence; with only one entity to consider the contract becomes a nullity because it is impossible for a legal entity to contract with itself. One of the essential elements of a contract is "[p]arties capable of contracting" (Civ. Code, § 1550), and there must be an assent of at least two separate, independent minds for no person, natural or corporate, can effectually make a contract with himself. (*Pacific Vinegar etc. Works* v. *Smith* (1904) 145 Cal. 352, 362 [78 P. 550, 104 Am.St.Rep. 442].)

Finally, even if the *alter ego* theory is applied this creates no relationship between Union and plaintiff Luis either specifically or by express contract. The doctrine as applied would only mean that plaintiff was being furnished water by Union through its *alter ego*, the Water Company; this relationship is simply that of a water company engaged in distributing water for public use to a consumer and under the cases heretofore cited there is no liability for fire losses (*Niehaus Bros. Co.* v. *Contra Costa etc. Co.* (1911) 159 Cal. 305 [113 P. 375, 36 L.R.A. N.S. 1045]; *Luning Mineral Products Co.* v. *East Bay Water Co.* (1924) 70 Cal.App. 94 [232 P. 721]).

The theory of plaintiff's first cause of action is based upon the alleged breach of an express contract and we have noted that plaintiff had no contract with either Union or Water Company to obtain water for fire protection.

The second cause of action is in tort, in effect, to recover damages for negligent breach of contract. Any liability is based upon the duty of defendants to plaintiff arising out of the contract. If there is no contract upon which plaintiff can rely (as is held above) there is no duty owed to plaintiff and any negligence on the part of defendants would not support a cause of action (see Prosser on Torts (2d ed.) pp. 166-168).

Plaintiff's third cause of action is clearly ex delicto and is not based upon an alleged contract; generally it is based upon the alleged voluntary assumption of an obligation by defendants and a negligent failure to perform such obligation, with resulting loss to plaintiff. Plaintiff's theory for the claimed liability is that by their conduct defendants Union

Oil and Water Company voluntarily assumed the obligation of opening the valve when the fire emergency required it, and having voluntarily assumed this obligation defendants were responsible if the obligation was breached.

The essence of this theory is a breach of an undertaking by a gratuitous promisor.

Plaintiff refers to authorities on the tortious failure to carry out a voluntary undertaking to render services necessary for another's bodily safety; the obligation which may flow from a gratuitous promise upon which the promisee relies; the obligation which may flow from the negligent construction or maintenance of a voluntarily provided railroad crossing signaling device or a voluntarily constructed sidewalk. However, these cases do not support plaintiff's position in the instant case.

Plaintiff cites the case of *Valdez v. Taylor Automobile Co.*, 129 Cal.App.2d 810 [278 P.2d 91], for the proposition that there can be tort liability for the failure to act upon a gratuitous promise. In that case plaintiff purchased a used car from defendant auto dealer and relied upon the latter's statements that insurance coverage would be obtained. Plaintiff also cites cases involving tort liability based upon the removal of a flagman from a railroad crossing and cases where representations and acts of defendant caused plaintiff to enter upon a dangerous course of conduct. However, none of the cases are applicable to the situation in the instant case where the alleged negligence of defendants was in not supplying adequate water for fire protection.

All of the cases cited pertain to conduct of defendants which conduct precluded plaintiff from taking another or safer course. In the instant case it is not alleged that plaintiff had another course of conduct open to him which would enable him to supply himself with water for the extinguishment of fires. There is no detrimental reliance established unless it can be shown that another course of conduct is open to the person so relying.

It is impossible to see how a theory of a gratuitous promisor will support a cause of action when the same representation even if incorporated into and formalized by a written contract between the Town of Orcutt and Water Company would not. Neither Union nor Water Company expressly guaranteed to plaintiff Luis that water would be available for the specific purpose of fire fighting nor did defendants assume any liability for plaintiffs' losses. A specific promise to furnish

water for fire protection to the consumer is required in this jurisdiction (*Niehaus Bros. Co.* v. *Contra Costa etc. Co.* (1911) 159 Cal. 305, 322-323 [113 P. 375, 36 L.R.A. N.S. 1045]).

The classic case of *Moch Co.* v. *Rensselaer Water Co.*, 247 N.Y. 160 [159 N.E. 896, 62 A.L.R. 1199], in which the opinion is written by Justice Cardozo, establishes the general rule that there can be no liability in tort for the negligent failure to supply water to fight fires. Justice Cardozo states:

"It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all. [Citing cases.] . . . . A time-honored formula often phrases the distinction as one between misfeasance and nonfeasance. . . . The query always is whether the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument for good. . . . We do not need to determine now what remedy, if any, there might be if the defendant had withheld the water or reduced the pressure with a malicious intent to do injury to the plaintiff or another. We put aside also the problem that would arise if there had been reckless and wanton indifference to consequences measured and foreseen. Difficulties would be present even then, but they need not now perplex us. What we are dealing with at this time is a mere negligent omission, unaccompanied by malice or other aggravating elements. The failure in such circumstances to furnish an adequate supply of water is at most the denial of a benefit. It is not the commission of a wrong."

The instant case falls within the rule and policy of the *Moch* case, *supra,* denying liability of a water company when water is not supplied to fight a fire. Plaintiff's contention that there are special circumstances in this case which would bring it from under the general rule in this country is without merit.

There is nothing more alleged in the instant case than a general gratuitous promise to supply water for fire protection; there is no contract with the plaintiff consumer to furnish water for fire protection. The failure of Water Company or Union to have men constantly available with which to open up the high-pressure line is mere nonfeasance and not misfeasance. There is nothing pleaded to show that Union or the Water Company entered into any affirmative course of conduct with respect to supplying water from the high-pressure valve. There is also no allegation that Union ever did open

the valve to combat an emergency by fire or did any other act besides "communicate."

As analyzed and held above, the first, second and third causes of action do not state facts sufficient to constitute a cause of action against defendants, or either of them. The fourth, fifth and sixth causes are derivative only and likewise fail.

The judgment appealed from is affirmed.

Burke, P. J., and Jefferson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 1, 1962.