[No. A070033. First Dist., Div. Three. Oct. 10, 1996.]

ERICSSON GE MOBILE COMMUNICATIONS, INC., Plaintiff and Appellant, v.
C.S.I. TELECOMMUNICATIONS ENGINEERS et al., Defendants and Respondents.

1592

**COUNSEL**

Crowell & Moring, Randall L. Erickson, Steven A. Fink and Stuart J. Einbinder for Plaintiff and Appellant.

Stubbs, Hittig & Leone and Gregory E. Stubbs for Defendants and Respondents.

## OPINION

**WALKER, J.**—By this appeal Ericsson GE Mobile Communications, Inc. (Ericsson), challenges the ruling of the trial court granting the defendants' special motion to strike its complaint requesting damages for intentional interference with economic advantage. The motion is made pursuant to the provisions of section 425.16 of the California Code of Civil Procedure.[1] Ericsson contends that the action should not be included within the class of suits subject to the special motion to strike as provided for in that section since it arose from acts of defendants (C.S.I.)[2] in performance of their contractual obligations and not from acts in furtherance of their right of free speech in connection with a public issue. We agree and reverse the order and judgment of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

In August 1991, Orange County (County), through its general services agency (GSA), issued a request for proposal (RFP) to supply and install an 800 MHz law enforcement public communication system on behalf of itself and other law enforcement agencies within the County. Ericsson and Motorola Communications and Electronics, Inc. (Motorola), submitted responsive proposals. In order to evaluate these proposals, a technical evaluation committee (TEC) was formed consisting of representatives from the County, the involved cities and various outside agencies. This committee considered both proposals to determine their conformity with the requirements of the County's RFP and submitted its report and evaluation to the GSA on August 26, 1993. In its report the TEC compared each bid, analyzing its compliance (or noncompliance) with the specifications for the system required by the County, without making any recommendation.

Thereafter, in early September 1993, the County issued its purchase order to C.S.I. contractually obligating C.S.I. to provide engineering services for the purpose of validating the conclusions reached by the evaluation committee concerning the technical compliance by Ericsson and Motorola with the

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2]Our reference to C.S.I., unless otherwise noted, shall include all three defendants, C.S.I. Telecommunications Engineers, Cafe Salvador, Inc., and Michael Newman, an officer of Cafe Salvador, Inc., and its principal employee.

County's RFP.[3] As consideration for their contractual obligation the County agreed to pay C.S.I. the sum of $20,000.

Among other express terms of the contract, C.S.I. promised to be responsible for the professional quality and technical accuracy of their services and agreed to exercise reasonable care and diligence to prevent any actions or conditions that could result in a conflict "with the best interest of the County."[4]

On September 13, 1993, in performance of its contractual obligations, C.S.I. submitted its report to the County generally criticizing the Ericsson proposal and recommending that the Motorola proposal be accepted. C.S.I. delineated the areas of concern and listed seven technical issues that Ericsson would have to resolve should the County decide to award the contract to them.

After receiving the C.S.I. report, the evaluation committee determined that both proposals were in some respects noncompliant with the RFP and stated that "although the Motorola proposal was technically superior, the [Ericsson] proposal was less costly." Based thereon the GSA recommended to the Orange County Board of Supervisors (Board) that Ericsson be selected for negotiation as the primary vendor conditioned upon its being able to resolve within its original bid price each of the seven specific issues identified by C.S.I.

At its meeting of October 26, 1993, the Board, following the recommendation of the GSA, formed a separate committee to meet with Ericsson in an

---

[3]The contract specifically provides: "The Contractor shall provide the following engineering services for validating the conclusions reached by the evaluation committee.

"1. Review the two digital proposals for compliance, both with the specifications by the County, and the ANSI/TIA/EIA/ ANSI/IEEE, and other reference standards.

"2. Review the Technical Evaluation Committee's comments regarding APCO/TIA Project 25 (TIA PN-3124).

"3. Determine if the system bid will provide the type of radio coverage that the County required in the RFP.

"4. Determine if the materials proposed are necessary for the project, and what discrepancies were made if any by the bidders.

"5. Conduct laboratory verification of the manufacturer's published parameters vs/actual measurements of: [¶] a. portable and mobile radio equipment; and [¶] b. base station equipment."

[4]The contract provides: "7. *Conflict of Interest* [¶] Contractor shall exercise reasonable care and diligence to prevent any actions or conditions that could result in a conflict with the best interest of the County. . . . [¶] Contractor's efforts shall include, but not be limited to, establishing precautions to prevent its employees or agents from making, receiving, providing, or offering gifts, entertainment, payments, loans, or other considerations which could be deemed to appear to influence individuals to act contrary to the best interest of County."

effort to resolve the seven asserted deficiencies in its bid. In mid-December 1993, this review team concluded that Ericsson could not satisfy the conditions and thereafter, at its January 25, 1994, meeting, the County awarded the contract to Motorola.

In October 1994, Ericsson filed this action against C.S.I. seeking damages based upon alleged intentional interference with economic advantage. In its complaint Ericsson asserts that C.S.I. intentionally misrepresented to the County the technical and financial merits of both the Ericsson and Motorola proposals in an effort to persuade the County to award its contract to Motorola. Specifically, Ericsson asserts that C.S.I. intended to interfere with its prospective contractual relationship with the County by formulating the seven technical conditions in its September 13, 1993, report, which was later adopted by the evaluation committee and forwarded to the Board. Ericsson alleges that certain of the enumerated conditions required supplying items that were proprietary to Motorola, which requirements could not have been met by Ericsson even though it could have provided a functional equivalent. Ericsson also states that on October 5, 1993, C.S.I. prepared a critique of the two proposals which summarized reference checks of the two competing companies with public entities or firms for whom they had provided communications systems and concluded Motorola's references were generally good while Ericsson's references were equivocal at best. Additionally, Ericsson alleges that C.S.I., in aiding the review team appointed to analyze Ericsson's proposals, deliberately misled the County. Ericsson's complaint concludes that by these acts C.S.I. intended to disrupt Ericsson's prospective economic relationship with the County.

C.S.I. filed a special motion to strike, claiming that Ericsson's complaint should be stricken pursuant to the provisions of section 425.16. C.S.I. contended that the cause of action arose from acts on the part of the defendants in furtherance of their right of petition or free speech under the United States or California Constitution in connection with a public issue, and that there was no reasonable probability of the plaintiff prevailing at trial since the actions undertaken by the defendants were wholly privileged pursuant to the provisions of Civil Code section 47, subdivision (b).

Ericsson, in opposing the motion, asserted that defendants failed to meet their burden in making a prima facie showing that the lawsuit arose from acts of the defendants in furtherance of their right to petition or free speech in connection with a public issue. It contends that the acts of defendants are not "speech" as contemplated by section 425.16 in that the C.S.I. defendants were private consultants who had entered into a contractual relationship with

the County obligating them to provide a report objectively evaluating the two proposals by Ericsson and Motorola. It further asserts that the communications were not in connection with a public issue as required by that section.

At the initial hearing on the motion, the court, at plaintiff's request, continued the matter to afford Ericsson the opportunity to conduct discovery; Ericsson subsequently submitted supplemental opposition addressing the merits of its action. Ericsson presented the deposition testimony of Michael S. Newman (vice-president of engineering for C.S.I.) which disclosed, through C.S.I.'s banking and telephone records, that C.S.I. had profited from numerous business transactions with Motorola prior to providing engineering services to the County. From 1992 to 1993 Motorola paid C.S.I. $60,480 for the purchase of Ericsson equipment by C.S.I. for resale to Motorola at a 100 percent markup. One of the payments (the sum of $24,665) was made during the month of November 1993 while C.S.I. was rendering services under the contract and the Ericsson and Motorola proposals were being evaluated by the County.

Ericsson submitted declarations indicating that in November 1993 Motorola personnel sent Newman a copy of an Ericsson internal document comparing its communication system to Motorola's. Newman first denied receiving this document but later admitted obtaining it when confronted with a copy at deposition. Additionally, Ericsson presented evidence that in a 1992 Alameda County communication systems procurement, C.S.I. had been retained by the county to evaluate the proposals submitted by Ericsson and Motorola. Alameda County awarded the contract to Motorola, despite the fact that Ericsson's proposal was for a lesser amount. Further, in a June 1993 procurement by the Salt Lake County Sheriff's office, in which C.S.I. acted as a consultant, the specifications could only be met by Motorola equipment. Although Ericsson's equipment was functionally equivalent, Ericsson did not submit a bid and the contract was awarded to Motorola.

On February 28, 1995, the court granted the defendants' special motion to strike, finding that the complaint arose from acts of defendants in furtherance of their right of free speech under the United States and California Constitutions in connection with a public issue, and that plaintiff had failed to establish a probability that it would prevail on the complaint, finding defendants' conduct absolutely privileged pursuant to Civil Code section 47, subdivision (b). The trial court also granted C.S.I.'s motion for attorney fees and costs pursuant to section 425.16, subdivision (c), and ordered Ericsson to pay $44,762.25 to C.S.I. This appeal follows from that decision.

The central issue on appeal is whether conduct undertaken in furtherance of a contractual obligation or duty can be protected by section 425.16 as an act made in furtherance of the right of free speech in connection with a public issue. In other words, can C.S.I.'s conduct in preparing a report evaluating the two proposals, which forms the basis for Ericsson's complaint, be construed as an expression of C.S.I.'s free speech in connection with a public issue, thus protecting it under section 425.16?

## DISCUSSION

In 1992 the California Legislature enacted section 425.16 which provides for a procedural remedy allowing the court to summarily dismiss actions categorized as SLAPP[5] suits. (Sen. Bill No. 1264 added new section 425.16 to the Code of Civil Procedure eff. Jan. 1, 1993; Stats. 1992, ch. 726, § 2.)

In enacting the statute the Legislature specifically declared that there had been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional right of freedom of speech and petition for the redress of grievances, and concluded that it was in the public's interest to encourage continued participation in matters of public significance which participation should not be chilled through the abuse of judicial process. (§ 425.16, subd. (a).)

In order to carry out the stated legislative purpose section 425.16 (in relevant part) provides: "(b) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(e) As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding

---

[5]The acronym SLAPP denotes strategic lawsuits against public participation.

authorized by law; or any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest."

In determining the applicability of the section we first ascertain the intent of the Legislature so as to effect the purpose of the law. ■ Clearly, the legislative purpose of section 425.16 is to provide a procedural device which would allow for prompt exposure and dismissal of SLAPP suits. The actions falling into this category have been generally recognized as civil lawsuits aimed at preventing citizens from exercising their political rights or at punishing those who have done so: suits that are brought to obtain an economic advantage over the defendant, not to vindicate a legally cognizable right of plaintiff. The paradigm SLAPP is a suit filed by a large land developer against environmental activists or a neighborhood association intended to chill the defendants' continued political or legal opposition to the developer's plans. (*Wilcox* v. *Superior Court* (1994) 27 Cal.App.4th 809 [33 Cal.Rptr.2d 446] (*Wilcox*); *Dixon* v. *Superior Court* (1994) 30 Cal.App.4th 733 [36 Cal.Rptr.2d 687] (*Dixon*).) "[W]hile SLAPP suits 'masquerade as ordinary lawsuits' the conceptual features which reveal them as SLAPP's are that they are generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so. (Pring, *SLAPPs: Strategic Lawsuits Against Public Participation* (1989) 7 Pace Envtl. L.Rev. 3, 5-6, 9.) Because winning is not a SLAPP plaintiff's primary motivation, defendants' traditional safeguards against meritless actions, (suits for malicious prosecution and abuse of process, requests for sanctions) are inadequate to counter SLAPP's. Instead, the SLAPPer considers any damage or sanction award which the SLAPPee might eventually recover as merely a cost of doing business. (Barker, *Common-Law and Statutory Solutions to the Problem of SLAPPs* [(1993)] 26 Loyola L.A.L.Rev. [395,] 406-407.) By the time a SLAPP victim can win a 'SLAPP-back' suit years later the SLAPP plaintiff will probably already have accomplished its underlying objective. Furthermore, retaliation against the SLAPPer may be counter-productive because it ties up the SLAPPee's resources even longer than defending the SLAPP suit itself. (*Id.* at p. 432; Comment, *Strategic Lawsuits Against Public Participation: An Analysis of the Solutions* [(1991)] 27 Cal. W. L.Rev. [399,] 403.)" (*Wilcox, supra,* 27 Cal.App.4th at pp. 816-817, fn. omitted.)

Since its enactment, the courts have ventured beyond the "paradigm" suit and applied section 425.16 to suits involving statements made during political campaigns (*Beilenson* v. *Superior Court* (1996) 44 Cal.App.4th 944 [52 Cal.Rptr.2d 357]); statements made in connection with a recall election

(*Robertson* v. *Rodriguez* (1995) 36 Cal.App.4th 347 [42 Cal.Rptr.2d 464]); statements made in a flyer concerning a candidate for public office (*Matson* v. *Dvorak* (1995) 40 Cal.App.4th 539 [46 Cal.Rptr.2d 880]); statements made in a notice of intention to circulate a petition for recall (*Evans* v. *Unkow* (1995) 38 Cal.App.4th 1490 [45 Cal.Rptr.2d 624]); acts supporting and encouraging litigation charging unfair competition (*Wilcox, supra,* 27 Cal.App.4th 809); a developer's encouragement of individuals to appear at a city council meeting to oppose a development project (*Ludwig* v. *Superior Court* (1995) 37 Cal.App.4th 8 [43 Cal.Rptr.2d 350]); private conversations involving a city's issuance of a conditional use permit for use of a home as a shelter for battered women (*Averill* v. *Superior Court* (1996) 42 Cal.App.4th 1170 [50 Cal.Rptr.2d 62]); comments made during the public review and comment period contemplated by the California Environmental Quality Act (*Dixon, supra,* 30 Cal.App.4th at p. 744); newspaper articles concerning an organization whose conduct was the subject of legislative hearings (*Lafayette Morehouse, Inc.* v. *Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855 [44 Cal.Rptr.2d 46]); and communications soliciting support in seeking an investigation by the Attorney General as to royalty payments to designated charities (*Dove Audio, Inc.* v. *Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777 [54 Cal.Rptr.2d 830]).

Despite this expansive interpretation of section 425.16, the courts have recognized that there are limits in its application. "[S]ection 425.16 does not apply in every case where the defendant may be able to raise a First Amendment defense to a cause of action. Rather, *it is limited* to exposing and dismissing SLAPP suits—lawsuits 'brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances' 'in connection with a public issue.' (§ 425.16, subds. (a), (b).)" (*Wilcox, supra,* 27 Cal.App.4th at p. 819, italics added.) C.S.I., however, argues that by the enactment of subdivision (e) the Legislature intended to define the scope of section 425.16 broadly, based on the subdivision's reference to "*any* written or oral statement or writing made in connection with an issue under consideration or review by [an] . . . executive . . . body, or any other official proceeding authorized by law." (Italics added.) As such, argues C.S.I., the acts complained of here are encompassed in the statutory language, justifying the dismissal of the action.

■ To answer the question of whether the Legislature intended to include within the scope of section 425.16 acts relating to the performance of a contract we look not only to the articulated purpose but to the language of the operative provisions of the statute itself. These provisions must be given a reasonable, commonsense meaning, one that is practical (not technical) which upon application will result in attaining the legislative goal,

rather than creating mischief or absurdity. (*DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 17-19 [194 Cal.Rptr. 722].) While section 425.16, subdivision (e), establishes the environment in which the speech (act) occurs, it does not by itself define the acts subject to a motion to strike. This is accomplished in section 425.16, subdivision (b).

Preliminarily, the court construes section 425.16, subdivision (b) as containing a two-part test for determining whether an action is a SLAPP suit subject to a special motion to strike. The first part tests whether the action is a SLAPP suit; the second decides whether, if it is a SLAPP suit, it may nonetheless survive the motion to strike.

### I.   *Is the Action a SLAAP Suit?*

Section 425.16, subdivision (b) establishes the parameters of a SLAPP cause of action as one arising from an act (1) "in furtherance of [a] person's right of . . . free speech" (2) made "in connection with a public issue."

*A.   Applicability of Section 425.16 (Acts in furtherance of the right of free speech).*

Applying these principles in determining the statute's applicability, we first focus on the meaning of the phrase *"act in furtherance of* [a] *person's right of. . . free speech."* "Furtherance" has been defined as "[t]he act of preferment: advancement, promotion." (Webster's Third New Internat. Dict. (1961 ed.) p. 924.) Thus in determining whether a cause of action falls within the scope of the statute, we hold that the Legislature intended to include only those suits that are based upon acts that are primarily in furtherance of a person's constitutional right of free speech, i.e., acts which advance or promote that right. For it is only in those cases where the party acted for the purpose of promoting or advancing his or her right of free speech, in contrast to one where the parties are performing or breaching their contractual obligations, that the right could be chilled by the specter of an unfounded lawsuit.

Here, the acts upon which Ericsson is relying in contending that defendants interfered with its prospective economic advantage are the same acts which could form the basis for an action by the County, against C.S.I., for breach of contract. If the County rather than Ericsson had brought a suit seeking damages based upon theories of breach of contract or misrepresentation, it would be an absurdity to suggest the County's action would be barred by a defense of free speech. To do so would open the door to the applicability of section 425.16 to breach of contract or fraud actions where

the act of the party relates to the formation or performance of contractual obligations and not with respect to the exercise of the right of free speech.

Since the acts of C.S.I., upon which the action here is based, were related to the performance of their contractual obligations, and were not motivated by their desire to promote or advance their right of free speech, the first prong of the test has not been met.

### B. Applicability of Section 425.16 (Acts in connection with a public issue).

We next discuss whether C.S.I.'s conduct was *"in connection with a public issue,"* a finding required by section 425.16 prior to a determination that an action is a SLAPP suit. In determining the legislative intent we find guidance in a line of cases concerning disciplinary actions taken against public employees for their speech or conduct which was potentially protected by the First Amendment of the United States Constitution. In these cases, one of the threshold inquiries in a court's analysis is whether the challenged speech may be " 'fairly characterized as constituting speech on a matter of public concern.' " (*Rankin* v. *McPherson* (1987) 483 U.S. 378, 384 [97 L.Ed.2d 315, 324 107 S.Ct. 2891]; *Connick* v. *Myers* (1983) 461 U.S. 138, 140, 146 [75 L.Ed.2d 708, 715, 719, 103 S.Ct. 1684]; *Gomez* v. *Texas Dept. of Mental Health* (5th Cir. 1986) 794 F.2d 1018, 1021.) In order to perform this analysis, courts must examine the "content, form and context of a given statement, as revealed by the whole record." (*Connick* v. *Myers, supra,* 461 U.S. at pp. 147-148 [75 L.Ed.2d at p. 720], fn. omitted.) In such examination, courts have focused on whether the speaker was advancing a purely private interest or speaking out as a concerned public citizen to inform the general public about possible wrongdoing. (See *Chico Police Officers' Assn.* v. *City of Chico* (1991) 232 Cal.App.3d 635, 644-645 [283 Cal.Rptr. 610]; *Koch* v. *City of Hutchinson* (10th Cir. 1988) 847 F.2d 1436, 1446-1447; *Gomez* v. *Texas Dept. of Mental Health, supra,* 794 F.2d at pp. 1021-1022; *Egger* v. *Phillips* (7th Cir. 1983) 710 F.2d 292, 317.) The courts in these cases have examined whether the speech was vital to allow citizens to make informed decisions about the operation of government. (*Chico Police Officers' Assn.* v. *City of Chico, supra,* 232 Cal.App.3d at p. 644; *Kannisto* v. *City and County of San Francisco* (9th Cir. 1976) 541 F.2d 841, 844.) However, courts have been careful to note that not all topics which transpire within a government office are of public concern. (*Connick* v. *Myers, supra,* 461 U.S. at p. 149 [75 L.Ed.2d at pp. 721-722]; *Gomez* v. *Texas Dept. of Mental Health, supra,* 794 F.2d at pp. 1021-1022; *Chico Police Officers' Assn.* v. *City of Chico, supra,* 232 Cal.App.3d at pp. 643-644.) The purpose behind the First Amendment's free speech provisions was

to " 'assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' [Citations.]" (*Connick* v. *Myers, supra,* 461 U.S. at p. 145 [75 L.Ed.2d at p. 718].)

In applying these principles to the case before us, we must determine whether the C.S.I. report can fairly be characterized as speech in connection with a public issue, or whether it was intended to advance a private interest. There is nothing in the record to suggest that C.S.I. was acting as a concerned citizen attempting to inform the general public about an issue of public significance. To the contrary, the record demonstrates that C.S.I. was advancing their purely private interest involving their contractual relationship with the County. Just as it is clear that C.S.I.'s conduct was not undertaken primarily for the purpose of furthering their right to free speech, so is it clear that they were acting primarily in contemplation of fulfilling their contractual obligation to the County, not for the purpose of speaking out on a public issue. While C.S.I. maintains the expenditure of public funds is an issue of general public interest, the specific purpose of the County in requesting C.S.I.'s services was to evaluate the proposed communication systems for the respective compliance with the county's contractual specifications. C.S.I. was advising the County with regard to these systems, with the expectation that the County would then use the information to determine who would be awarded the contract. C.S.I. was not providing any information to the general public regarding the expenditure of public funds, or regarding any other matter. We hold, therefore, that C.S.I.'s "speech" (i.e. report) was not made in connection with a public issue, as contemplated by section 425.16.

## II.   *Is There a Probability of Prevailing on the Claim?*

Having determined that C.S.I.'s conduct was neither an act made in furtherance of their right to free speech, nor speech made in connection with a public issue, the court concludes that Ericsson's action is not a SLAPP suit within the meaning of section 425.16, subdivision (b). As such, it is unnecessary to address the second part of that section's test: whether Ericsson has established a probability that it will prevail on the complaint. The burden on the plaintiff to establish a probability of prevailing does not arise until the claim has been held to fall within the scope of the statute. (*Wilcox, supra,* 27 Cal.App.4th at p. 823.) Thus we decline to rule on this issue.

## III.   *Attorney Fees and Costs*

Our holding of the inapplicability of section 425.16 requires reversal of the trial court's award of $44,762.25 in attorney fees and costs to C.S.I.

Further, our reversal requires remand to the trial court for consideration of whether Ericsson is entitled to attorney fees and costs in opposing the motion. Under the terms of section 425.16, subdivision (c): "In any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. *If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5.*" (Italics added.) In its opposition to C.S.I.'s special motion to strike, Ericsson contended the motion was frivolous, without merit and filed in bad faith. Upon remand, and in accordance with the views expressed in our opinion, the trial court must determine Ericsson's entitlement to attorney fees and costs in defending the motion and to its attorney fees in pursuing this appeal.

The judgment is reversed and the case is remanded to the trial court for the purpose of reinstituting the action and for a determination of Ericsson's entitlement to costs and reasonable attorney fees pursuant to section 425.16, subdivision (c). Ericsson is awarded costs on appeal.

Corrigan, Acting P. J., and Parrilli, J., concurred.

Respondents' petition for review by the Supreme Court was denied January 15, 1997. Mosk, J., was of the opinion that the petition should be granted.