[No. B108463. Second Dist., Div. Six. June 18, 1998.]

MISSION OAKS RANCH, LTD., Plaintiff and Appellant, v.
COUNTY OF SANTA BARBARA et al., Defendants and Respondents.

[No. B111367. Second Dist., Div. Six. June 18, 1998.]

MISSION OAKS RANCH, LTD., Plaintiff and Respondent, v.
COUNTY OF SANTA BARBARA, Defendant and Appellant.

**COUNSEL**

Douglas B. Schwab, Alschuler, Grossman & Pines, Marshall B. Grossman, Burt Pines, Kenneth S. Meyers, Reicker, Clough, Pfau & Pyle and Frederick Clough for Plaintiff and Appellant and for Plaintiff and Respondent.

Stephen Shane Stark, County Counsel, Virginia R. Pesola, Deputy County Counsel, Hedges & Caldwell, David Pettit and Mary Newcombe for Defendants and Respondents and for Defendant and Appellant.

Philip A. Seymour, Severson & Werson, Jan T. Chilton and David A. Ericksen for Defendants and Respondents.

## OPINION

STONE (S. J.), P. J.—A developer is disgruntled with the findings of a draft environmental impact report (DEIR) prepared by the consultant the county hires to evaluate the developer's project proposal. The DEIR explains that unmitigable impacts would result if the project were developed. The developer hires its own consultant who prepares and submits a report to the county which states there are no such unmitigable impacts. In the final environmental impact report (FEIR), the county denies approval for the project due to the unmitigable impacts. The developer sues the county, the county's consultant and others over the denial of project approval. The trial court sustains defendants' demurrers and grants motions to strike the action and enters judgment in favor of the defendants.

Mission Oaks Ranch, Ltd. (Mission Oaks) appeals from the judgment in favor of the County of Santa Barbara (the County), Envicom Corporation (Envicom), Storrer Environmental Services (Storrer) and various individuals.[1] Because the action is untimely and administrative mandamus would have been the proper remedy to seek, we affirm. Furthermore, we affirm because the respondents owe no duty to Mission Oaks, the statements at issue are privileged under Civil Code section 47, and the complaint is subject to Code of Civil Procedure section 425.16, the anti-SLAPP statute.[2] (SLAPP is an acronym for strategic lawsuit against public participation.)

### FACTS

Mission Oaks submitted an application to the County for a tentative tract map to subdivide and develop 3,877 acres near Buellton into 32 lots. Based on the initial study, the County issued a request for proposal to nine independent consultants to prepare the environmental impact report (EIR). The County informed Mission Oaks that it would select an independent

[1] The individual respondents are John Storrer, Joseph G. Johns, Andrew Mills and John McCarthy.

[2] All statutory references are to the Code of Civil Procedure unless otherwise stated.

consultant who would exercise its own independent judgment in accord with county guidelines. Mission Oaks alleges that the County did not consult Mission Oaks regarding the selection of Envicom and Storrer, the consultants chosen by the County to prepare the EIR.[3] But Mission Oaks also alleges that it notified the County that it had selected Envicom as the independent consultant, a decision the County accepted.

Mission Oaks had the responsibility to pay the consultants to prepare the EIR. Mission Oaks agreed with the County "that the adequacy of performance of consultant . . . shall be determined at the sole discretion of County. Applicant [Mission Oaks] agrees that final authority on all decisions concerning the preparation of contractual documents lies in the sole discretion of County . . . ."

The County contracted with Envicom to prepare the EIR. The contract states, in pertinent part, "[T]he draft EIR . . . and the final EIR must reflect the lead agency's [County's] independent judgment (CEQA [California Environmental Quality Act] Guidelines, [Cal. Code Regs., tit. 14, §] 15084 [and] Pub. [Resources] Code, [§] 21082.1, [subd.] (c).) Accordingly, the *final responsibility and final authority on all questions concerning the content and quality of the EIR lies in the sole discretion of the County . . . . [¶] Consultant understands and agrees that its responsibility to provide a complete and accurate EIR is owed solely to County and that its accountability under this Contract shall likewise be solely to County and not to Applicant or to any other third-person or entity. . . .*" (Italics added.)

Pursuant to the consultant contract, Envicom prepared the DEIR which sets forth a multitude of significant adverse and unmitigable impacts presented by the project proposal on numerous basic resources. Mission Oaks opines that the preparation of the DEIR was a sham, and that the conclusions in the DEIR are false. It hired its own consultant to submit reports concluding that there is no substantial evidence to support the findings and conclusions of the DEIR. The County's FEIR adhered to the DEIR, and the County's planning commission recommended denial of the project. After holding four hearings, the board of supervisors denied the project proposal. On May 23, 1995, the board adopted findings and conclusions in support of its decision.

In August 1995, Mission Oaks filed a petition for administrative mandate seeking to compel the board to vacate its denial of the tract map application

---

[3]The County hired Storrer for the limited purpose of jointly preparing the biological section of the EIR with Envicom. Envicom had primary responsibility as to all other sections of the EIR.

and to obtain a revised EIR. Mission Oaks also sought damages for a taking of its property and for violation of its civil rights. That petition is not before us today.

Mission Oaks filed the instant complaint on December 21, 1995, asserting that the EIR is a sham; that the consultants collusively prepared the EIR with the County in derogation of law and without factual support as part of a conspiracy to deny Mission Oaks the right to develop its property. Mission Oaks alleged that "for no valid reasons whatsoever, but simply to prevent development and for the purpose of generating excessive fees, the County falsely encouraged Mission Oaks to proceed with the EIR while knowingly having no intention of ever approving or recommending approval of the Project."

Except for a Williamson Act (Gov. Code, § 51200 et seq.) claim, concerning agricultural preserves, the trial court sustained the demurrers submitted by respondents without leave to amend and granted the consultants' special motions to strike the complaint pursuant to section 425.16. Mission Oaks dismissed the Williamson Act claim, and the trial court entered judgment in favor of respondents.

The trial court issued a lengthy decision and order in support of the judgment. Pursuant to the stipulation of the parties, the court awarded attorney's fees and costs to the individual defendants but denied attorney's fees to the County by ruling that the County is not a "person" for purposes of SLAPP, and because the County did not prevail on the Williamson Act claim. This appeal, and a cross-appeal regarding attorney's fees, ensued from the judgment.[4]

## DISCUSSION

In reviewing a judgment of dismissal after demurrers are sustained without leave to amend, we treat the pleadings as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. (*Aubry* v. *Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) When documents, such as contracts, are incorporated by reference into the complaint as here, "The recitals, if contrary to allegations in the pleading, will be given precedence, and the pleader's inconsistent allegations as to the meaning and effect of an unambiguous document will be disregarded." (4 Witkin, Cal. Procedure (3d ed.

[4]We have consolidated the County's separate cross-appeal from the denial of postjudgment attorney's fees (No. B111367) with the main appeal under No. B108463.

1985) Pleading, § 385, p. 433; *Stoddard* v. *Treadwell* (1864) 26 Cal. 294, 303.) We independently review the complaint to determine whether it states a cause of action and whether defects can be cured by amendment. The burden of proof is squarely on the plaintiff, and if there is no liability as a matter of law, leave to amend should not be granted. (*Hendy* v. *Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1]; *Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; *Ramirez* v. *USAA Casualty Ins. Co.* (1991) 234 Cal.App.3d 391, 397 [285 Cal.Rptr. 757].) The judgment of dismissal will be affirmed if it is proper on any of the grounds stated in the demurrers, whether or not the trial court relied on any of those grounds. (*Carman* v. *Alvord* (1982) 31 Cal.3d 318, 324 [182 Cal.Rptr. 506, 644 P.2d 192].)

■ In reviewing a judgment of dismissal after the trial court grants a special motion to strike pursuant to section 425.16, we use our independent judgment to determine whether defendants acted in furtherance of their right of petition or free speech in connection with a public issue. (*Matson* v. *Dvorak* (1995) 40 Cal.App.4th 539, 548 [46 Cal.Rptr.2d 880]; *Wilcox* v. *Superior Court* (1994) 27 Cal.App.4th 809, 819-821 [33 Cal.Rptr.2d 446].) Defendants bear the burden to make this prima facie case. If defendants meet their burden, we then consider whether plaintiffs have produced sufficient admissible evidence to establish the probability of prevailing on the merits on every cause of action asserted. (*College Hospital Inc.* v. *Superior Court* (1994) 8 Cal.4th 704, 719 [34 Cal.Rptr.2d 898, 882 P.2d 894]; *Matson, supra*, at p. 548; *Wilcox, supra*, at pp. 823-824.) The motion to strike is properly granted if, as a matter of law, the properly pleaded facts do not support a claim for relief. (*Wilcox, supra*, at pp. 823-824.)

The only cause of action against the County which remains at issue is the breach of contract claim—that the EIR was not prepared pursuant to requirements of California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.) (CEQA) and that the fees charged Mission Oaks was unreasonable.

Mission Oaks appeals as to its claims against Envicom and its principal, Joseph Johns, for misrepresentation of Envicom's abilities and responsibilities, for breach of contract as a third party beneficiary of the County's contract with Envicom and for negligence. Mission Oaks challenges the judgment on similar claims against Storrer, its principal, John Storrer, and against Andrew Mills and John McCarthy for negligence and breach of contract. Mission Oaks also alleges that the consultants engaged in a conspiracy to commit fraud to prevent it from obtaining an EIR stating that the project complies with CEQA.

## Claim Against the County

■ Mission Oaks alleges that the County engaged in a conspiracy to commit fraud by predetermining that it would reject the project and thus obtaining an EIR supporting its viewpoint without complying with CEQA and exorbitantly charging Mission Oaks in the process. Mission Oaks alleges that in exchange for paying the consultant costs, the County owed and breached its duty to Mission Oaks to comply with CEQA in preparing the EIR. Mission Oaks opines that it is a third party creditor beneficiary to the contract between the County and Envicom.

## Procedural Bars Render Suit For Damages Improper

"Any action . . . to attack, review, [or] set aside . . . a determination, finding, or decision of a public agency, made as a result of a proceeding in which by law a hearing is required . . . , evidence is required to be taken and discretion in the determination of facts is vested in a public agency, on the grounds of noncompliance with the provisions of this division shall be in accordance with the provisions of Section 1094.5 of the Code of Civil Procedure." (Pub. Resources Code, § 21168.) Administrative mandamus is the exclusive means by which to attack compliance with CEQA. (*Western States Petroleum Assn.* v. *Superior Court* (1995) 9 Cal.4th 559, 566-568 [38 Cal.Rptr.2d 139, 888 P.2d 1268]; *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 254-255 [104 Cal.Rptr. 761, 502 P.2d 1049]; *Hecton* v. *People* ex rel. *Dept. of Transportation* (1976) 58 Cal.App.3d 653, 656 [130 Cal.Rptr. 230].) Mission Oaks may not sue the County for damages caused by failure to prepare a proper EIR. (Pub. Resources Code, §§ 21168, 21168.5; Gov. Code, §§ 818.4, 821.2.)

## Suit Untimely

Furthermore, the action against the County is untimely. Under Public Resources Code section 21167, subdivision (c), a proceeding challenging compliance with CEQA must be commenced within 30 days of the filing of a determination in the matter. Actions involving a controversy arising out of the Subdivision Map Act must be filed within 90 days from the date of the administrative decision. (Gov. Code, §§ 66499.37, 66474, subd. (e); Pub. Resources Code, § 21080, subd. (a); *Hensler* v. *City of Glendale* (1994) 8 Cal.4th 1, 25-27 [32 Cal.Rptr.2d 244, 876 P.2d 1043].)

Here the board of supervisors voted to deny the project on May 23, 1995. Mission Oaks did not file the instant action until December 21, 1995. One may not bypass the mandamus remedy by filing a separate suit for damages. (*Hensler* v. *City of Glendale, supra,* 8 Cal.4th at pp. 25-26.)

*County Owes No Duty to Provide EIR Acceptable to Mission Oaks*

Mission Oaks alleges that the consultants spent excessive time producing an inaccurate EIR that does not comply with CEQA. It asserts that the County breached the implied term of its contract to charge reasonable fees to have a proper EIR prepared. Indeed, Mission Oaks alleges that the defendants conspired to prevent Mission Oaks from obtaining an EIR which complies with CEQA. Mission Oaks seeks refund of fees it paid to the County to obtain an EIR which it does not find suitable. The allegations state no cognizable claim.

Under the statutorily authorized fee agreement between the County and Mission Oaks, Mission Oaks agreed that the determination of the adequacy of the performance of the EIR consultant and the extent of payment are within the sole discretion of the County. Mission Oaks is bound by the contract. (*Anderson* v. *Savin Corp.* (1988) 206 Cal.App.3d 356, 363, fn. 1 [254 Cal.Rptr. 627].) Indeed, the County could not cede determination of adequacy of the contents and evaluation of its merits to others. Pursuant to CEQA, the contract between the County and Envicom properly provides that the final responsibility and final authority as to the quality and the content of the EIR lies in the sole discretion of the County. (See Pub. Resources Code, §§ 21000, 21002, 21082; *Sundstrom* v. *County of Mendocino* (1988) 202 Cal.App.3d 296, 307 [248 Cal.Rptr. 352].) The fee agreement properly provides that "Applicant agrees that the adequacy of performance of Consultant and the extent of payment to Consultant for its work shall be determined at the sole discretion of County."

Envicom's responsibility to provide an accurate EIR is owed solely to the County, and not to the developer or to other third parties. CEQA confers the duty upon the local lead agency to produce an adequate EIR for dissemination to the public, and the discretion to evaluate the project for the public. (Pub. Resources Code, §§ 21061, 21100.) These statutory obligations may not be the consideration for a contract or promise, nor may the County bargain away its constitutional duty to regulate development. (Civ. Code, §§ 1605, 1606; *Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785, 800 [132 Cal.Rptr. 386, 553 P.2d 546]; *Delucchi* v. *County of Santa Cruz* (1986) 179 Cal.App.3d 814, 823 [225 Cal.Rptr. 43]; *Carty* v. *City of Ojai* (1978) 77 Cal.App.3d 329, 342 [143 Cal.Rptr. 506].) The County, as lead agency on the project, owes its duty to the public to release a proper EIR. (*Laurel Heights Improvement Assn.* v. *Regents of University of California* (1988) 47 Cal.3d 376, 392 [253 Cal.Rptr. 426, 764 P.2d 278].) The County owes no duty to assuage the desires of the potential

developer. The County did not abuse its discretion under the instant contracts or its duty under CEQA as to any of the consultant defendants or otherwise.

Mission Oaks opines that the County owes it the duty to comply with CEQA because it is a third party creditor beneficiary of the County's contract with Envicom and the Storrer defendants. Mission Oaks argues that the County's proper performance under the contract with the consultants would discharge the County's legal duty owed to Mission Oaks to provide a proper EIR. (Citing *Martinez* v. *Socoma Companies, Inc.* (1974) 11 Cal.3d 394 [113 Cal.Rptr. 585, 521 P.2d 841]; *Friends of Mammoth* v. *Board of Supervisors, supra,* 8 Cal.3d at p. 262; *COAC, Inc.* v. *Kennedy Engineers* (1977) 67 Cal.App.3d 916 [136 Cal.Rptr. 890].) For the reasons discussed above, we disagree. (See also Rest.2d, Contracts, § 313; *Guardians Assn.* v. *Civil Serv. Comm'n N.Y.C.* (1983) 463 U.S. 582, 603, fn. 24 [103 S.Ct. 3221, 3233, 77 L.Ed.2d 866, 882].)

■ One who is not a party to a contract has no right to enforce it unless it is an intended third party beneficiary of the contract. (*Martinez* v. *Socoma Companies, Inc., supra,* 11 Cal.3d at p. 400.) Whether a putative third party is an intended beneficiary of the contract depends on whether such intent appears from the written terms of the contract. (*Garcia* v. *Truck Ins. Exchange* (1984) 36 Cal.3d 426, 436 [204 Cal.Rptr. 435, 682 P.2d 1100]; *Shutes* v. *Cheney* (1954) 123 Cal.App.2d 256, 262 [266 P.2d 902].)

■ Paragraph 14 of the County's contract with Envicom expressly provides that Envicom "understands and agrees that its responsibility to provide a complete and accurate EIR is owed solely to County and that its accountability under this Contract shall likewise be solely to County and not to Applicant or to any other third-person or entity." (Cf. *COAC, Inc.* v. *Kennedy Engineers, supra,* 67 Cal.App.3d 916 [Water district, as owner, owed implied contractual duty to contractor building water treatment plant project to timely secure EIR and all permits. EIR improperly delayed to the contractor's damage. No such duty or delict here.].) And, as stated above, Mission Oaks's contract with the County expressly provided that the adequacy of the consultants' performance and the extent of payment to Mission Oaks are to be determined at the sole discretion of the County.

*Other Claims Against Consultants, the Envicom and Storrer Defendants*

*Negligence, Misrepresentation and Conspiracy to Commit Fraud*

■ Whether or not there is a legal duty to a third party who is not in privity of contract is a question of law whose determination is a matter of

policy. The determination involves balancing whether the transaction was intended to affect the plaintiff, the foreseeability of harm to plaintiff, the degree of certainty that plaintiff suffered injury as a result of the defendants' conduct, the closeness of the connection between such conduct and the injury suffered, whether moral blame should attach to the conduct and the policy of preventing future harm. (*Bily* v. *Arthur Young & Co.* (1992) 3 Cal.4th 370, 397 [11 Cal.Rptr.2d 51, 834 P.2d 745, 48 A.L.R.5th 835]; *Biakanja* v. *Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358].) Where the injury is intangible and economic, the potential right to recovery is much more limited than is the case with physical harm. (*Thing* v. *La Chusa* (1989) 48 Cal.3d 644, 663-664 [257 Cal.Rptr. 865, 771 P.2d 814].)

Here the contract with the consultants to prepare the EIR was not intended to affect Mission Oaks directly; it was intended to provide the County and the public with the information it needed to assess the proposed project pursuant to CEQA. (*Laurel Heights Improvement Assn.* v. *Regents of University of California, supra,* 47 Cal.3d at p. 392; Pub. Resources Code, §§ 21000-21002.) The County must use its independent judgment to consider the impacts of the proposed project on the environment and on the public weal, and not as to the developer, as explicated by CEQA. Although the decision of the County affects the project proponent, the preparation of the EIR may not be prepared with that concern in mind.

There is little degree of certainty and less closeness of connection between the consultants' conduct and the "injury" suffered by Mission Oaks. By statute and contract, it is the County which must independently make the decision whether or not to proceed with the project based partly on the professional opinions garnered by the expert environmental consultants. Although it is foreseeable that the project proponent may suffer economic harm, we may not give much weight to this factor here and we do not predicate our evaluation of the claim in the instant case on foreseeability of potential economic harm to Mission Oaks. (See *Bily* v. *Arthur Young & Co., supra,* 3 Cal.4th at pp. 383-384, 399-400.) The relationship between the consultants and Mission Oaks is "less than a 'close connection,' " as it must be by law. (*Id.,* at p. 401.)

The concept of moral blame and the policy of preventing future harm do not augur in favor of Mission Oaks here. CEQA is designed to protect the public. If courts permitted lawsuits against environmental consultants by project proponents regarding the findings stated in their reports, the independence of the professional experts and the objectivity of their specialized findings and conclusions would be undermined and jeopardized by fear of

retaliatory action. (See generally, *Forrester* v. *White* (1988) 484 U.S. 219, 226-227 [108 S.Ct. 538, 543-544, 98 L.Ed.2d 555, 564-565] [regarding the independence of the judiciary]; *Lavit* v. *Superior Court* (1992) 173 Ariz. 96, 99 [839 P.2d 1141, 1144].) The consultant defendants may not be held liable for negligence here.

Mission Oaks alleges that Envicom made false representations in its proposal to the County: regarding its expertise; that it would comply with CEQA; and that it would compare the project to model projects. Mission Oaks argues Envicom intended to defraud Mission Oaks which justifiably relied on these representations to its detriment. Mission Oaks alleges that the Storrer defendants inadequately prepared the biological portion of the EIR. The allegations as a whole, viewed in conjunction with the documents regarding the proposal incorporated into the complaint and statutory constraints, do not support any cause of action.

The decision to reject the proposal was solely the responsibility of the County, which used its independent judgment. According to the allegations of Mission Oaks' complaint, Envicom's proposal did not cause disapproval of its development proposal. Mission Oaks alleged that the County had decided to deny the project proposal in advance of issuing the contracts to the consultants. Mission Oaks alleged that the situation was a predetermined charade. Neither did Mission Oaks allege that Envicom knew with substantial certainty that Mission Oaks would rely on Envicom's proposal, submitted to the County in response to the County's request for proposal. The request for proposal does not state that Mission Oaks had any role in selecting the consultants. In fact, the request states that the County alone would review the proposals and select the consultants who must be independent of the project proponent. There are no allegations that Envicom knew that Mission Oaks would have any involvement in the selection process. For these reasons, Mission Oaks may not sue the consultants for alleged statements made to the County which could not have caused the harm alleged.

Because the allegations do not provide facts showing the possibility of a conspiracy to commit tortious conduct, the trial court properly sustained the demurrer on that cause. Nor may Mission Oaks sue for negligent false promises, as alleged. (*Magpali* v. *Farmers Group, Inc.* (1996) 48 Cal.App.4th 471, 481-482 [55 Cal.Rptr.2d 225].)

*Civil Code Section 47*

There are additional reasons why Mission Oaks' tort claims may not be prosecuted. ■ Civil Code section 47, which provides an absolute privilege against tort claims other than malicious prosecution, applies "to any

communication (1) made in judicial and quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." (*Silberg* v. *Anderson* (1990) 50 Cal.3d 205, 212 [266 Cal.Rptr. 638, 786 P.2d 365].) The reason for the privilege is to ensure that judicial and government decision making bodies may speak and act freely, without the threat of liability for their thoughts and actions. (*Id.*, at pp. 215-216; *Stacy & Witbeck, Inc.* v. *City and County of San Francisco* (1996) 47 Cal.App.4th 1, 6 [54 Cal.Rptr.2d 530].)

■ Civil Code section 47 applies to the allegations here to bar the tort claims alleged. Section 47 applies to the preparation and certification of an EIR. (*Rubin* v. *Green* (1993) 4 Cal.4th 1187, 1194 [17 Cal.Rptr.2d 828, 847 P.2d 1044]; *Dixon* v. *Superior Court* (1994) 30 Cal.App.4th 733, 743-745 [36 Cal.Rptr.2d 687]; *Gootee* v. *Lightner* (1990) 224 Cal.App.3d 587, 593-595 [274 Cal.Rptr. 697]; *Cayley* v. *Nunn* (1987) 190 Cal.App.3d 300, 303 [235 Cal.Rptr. 385]; *Pettitt* v. *Levy* (1972) 28 Cal.App.3d 484, 488 [104 Cal.Rptr. 650].) Public Resources Code section 21082.1, subdivision (a) authorizes a consultant to prepare the EIR. (See also Cal. Code Regs., tit. 14, § 15084, subd. (d)(2), the CEQA guidelines.) The consultants' responses to the request for proposal, the County's contracts with them and the statements made in the EIR are communications to achieve the objects of the instant litigation and they are related to the action. (*Silberg* v. *Anderson, supra,* 50 Cal.3d at pp. 219-220.) Motives, morals, ethics and intent are not elements of the privilege. (*Id.*, at p. 220.) Section 47 applies to preparatory documents and situations, such as those regarding seeking employment for gain, provided the elements of the privilege are met. (50 Cal.3d at p. 220; *Gootee, supra,* at pp. 593-595; *Block* v. *Sacramento Clinical Labs, Inc.* (1982) 131 Cal.App.3d 386, 393, fn. 10 [182 Cal.Rptr. 438]; *Pettitt, supra,* at pp. 490-491.) We do not find persuasive the argument that the matter at issue is merely the conduct of respondents rather than information supplied for preparation of the EIR. It is the information in an EIR which local agencies and the public evaluate to arrive at informed opinions and decisions on the development proposals, such as the one proffered by Mission Oaks. (*Laurel Heights Improvement Assn.* v. *Regents of University of California, supra,* 47 Cal.3d at pp. 391-392.)

### Anti-SLAPP Statute

■ Section 425.16 also applies to respondents. Under section 425.16, the trial court granted respondents' special motion to strike the complaint and dismiss the action because it is a meritless suit designed to chill free

speech and conduct in connection with a public issue. (§ 425.16, subds. (b), (e); *Wilcox* v. *Superior Court, supra,* 27 Cal.App.4th at pp. 816, 819-821.)

Mission Oaks opines that because it sued Envicom for conduct as a paid environmental consultant, the anti-SLAPP statute does not apply. We disagree. Commercial conduct and speech made in connection with an issue of public concern under consideration by a legislative body are subject to the anti-SLAPP statute. (§ 425.16, subds. (b), (e); *Guglielmi* v. *Spelling-Goldberg Productions* (1979) 25 Cal.3d 860, 868 [160 Cal.Rptr. 352, 603 P.2d 454]; *Wilcox* v. *Superior Court, supra,* 27 Cal.App.4th at p. 822, fn. 6.) Section 425.16 is to be broadly construed to be applicable to any statement, writing or conduct made in connection with an issue of public concern which is under consideration or review by a legislative body or which is made in preparation for such review. (*Braun* v. *Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1047-1048 [61 Cal.Rptr.2d 58]; *Dove Audio, Inc.* v. *Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 784 [54 Cal.Rptr.2d 830].)

Mission Oaks opines that the instant situation is akin to the one presented in *Ericsson GE Mobile Communications, Inc.* v. *C.S.I. Telecommunications Engineers* (1996) 49 Cal.App.4th 1591 [57 Cal.Rptr.2d 491]. *Ericsson* is distinguishable. *Ericsson* concerned two companies competing for a contract to provide a telecommunications system to the County of Orange. Orange hired a third company, C.S.I., as a consultant to evaluate the two proposals. C.S.I. told Orange that one of the company's proposals, although less expensive, did not comport with technical design specifications. Orange was interested in the less expensive proposal, but the company providing it could not satisfy the county that it could meet the specifications. The contract was let to the other company.

The losing bidder sued C.S.I, claiming it harbored bias in favor of the company awarded the contract which had prior profitable dealings with C.S.I. C.S.I. filed a SLAPP motion but it did not prevail. *Ericsson* concluded that the situation did not concern a matter of public interest; it simply involved two companies competing for a contract to provide a product in the absence of public participation or concern. (*Ericsson GE Mobile Communications, Inc.* v. *C.S.I. Telecommunications Engineers, supra,* 49 Cal.App.4th at p. 1603.)

This case differs from *Ericsson* in that the instant contracts directly concern the preparation of an EIR for required public hearings concerning the potential development of projects. *Ericsson* merely involved private concerns regarding the sale of a telecommunications system sans public

hearings or interests. (See *Ericsson GE Mobile Communications, Inc.* v. *C.S.I. Telecommunications Engineers*, *supra*, 49 Cal.App.4th at p. 1603 [emphasizing that it involved purely private concerns].) The instant case involves approval of a tentative map which is a matter of public interest requiring public hearings. (Gov. Code, § 66451.3.) It is immaterial that the consultants were paid to prepare the EIR. (See *Ludwig* v. *Superior Court* (1995) 37 Cal.App.4th 8, 15 [43 Cal.Rptr.2d 350] [SLAPP applies to private developer using others to oppose competing development project proposals]; *Dixon* v. *Superior Court*, *supra*, 30 Cal.App.4th at pp. 742-744.)

Here Mission Oaks is simply a disgruntled developer that does not like the findings prepared by the independent environmental consultants for the County and the public. Mission Oaks seeks to stifle the EIR prepared for the County and the public. The anti-SLAPP statute is designed to preclude such attempts to silence those who speak out on matters of public interest before legislative bodies.

Respondents met their burden to establish a prima facie case showing that SLAPP applies to the facts alleged, and the burden to establish the probability of success on the merits of its allegations shifted to Mission Oaks. (*Wilcox* v. *Superior Court*, *supra*, 27 Cal.App.4th at pp. 823-825.) Mission Oaks does not and cannot bear its burden to show the probability of success on the merits of the causes of action it alleged. (*Id.*, at p. 823; see generally, *Dixon* v. *Superior Court*, *supra*, 30 Cal.App.4th at pp. 744-745.) Mission Oaks seeks to coerce the County and the consultants to change their views on its development proposal. The anti-SLAPP statute is designed to quickly put an end to suits such as the instant one. (See generally, *Dixon*, *supra*, at pp. 744-746.)

### County's Cross-appeal Regarding Attorney's Fees Under the Anti-SLAPP Statute

■ The trial court denied attorney's fees to the County because it is not a "person" even though the County prevailed on the SLAPP motion, as did all the consultant respondents. Section 425.16, subdivision (c) states, in pertinent part, that "[i]n any action subject to subdivision (b), a prevailing defendant . . . shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5."

Section 425.16, subdivision (b) states, in pertinent part, that "[a] cause of action against a person arising from any act of that person in furtherance of

the person's right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike . . . ." Section 425.16 applies to conduct as well as speech and petition. We review the construction of statutes independently. (*New York Times Co.* v. *Superior Court* (1997) 52 Cal.App.4th 97, 100 [60 Cal.Rptr.2d 410].)

The trial court in the instant case rendered its decision before we decided *Bradbury* v. *Superior Court* (1996) 49 Cal.App.4th 1108 [57 Cal.Rptr.2d 207]. In *Bradbury*, we concluded that public entities are "persons" for the purpose of the anti-SLAPP statute. (*Id.*, at p. 1114.) We stated, "The anti-SLAPP suit statute is designed to protect the speech interests of private citizens, the public, *and governmental speakers.*" (*Id.*, at p. 1117, italics added.) The value of the speech does not depend on its source. (*Id.*, at p. 1119.) Our Constitution protects everyone, even politicians. (*Beilenson* v. *Superior Court* (1996) 44 Cal.App.4th 944, 946 [52 Cal.Rptr.2d 357].) Government has a legitimate, independent, statutory role to play in the consideration of EIR's and the approval of development proposals. As such, it should be protected in performing its role on matters of public interest, including purported inadequate performance of its role under CEQA. (*Bradbury, supra*, at p. 1115; see generally, *Dixon* v. *Superior Court, supra*, 30 Cal.App.4th at pp. 741-746.)

As section 425.16, subdivision (a) states, it is in the public interest to encourage continued participation in matters of public significance, and such participation should not be chilled by abusing the judicial process. Disgruntled developers should not be permitted to frivolously tie up the resources of government agencies and the judiciary by suing for damages over the denial of their map and permit applications. Administrative mandamus is the proper remedy to challenge the propriety of government actions on such matters. (See *California Coastal Com.* v. *Superior Court* (1989) 210 Cal.App.3d 1488, 1496 [258 Cal.Rptr. 567].) For reasons discussed, *ante*, Mission Oaks cannot prevail on the merits here.

That the demurrers were not sustained on one of the eight causes of action, the Williamson Act cause, should not preclude an award of attorney's fees and costs. The trial court did not believe it had merit; it simply did not have the agricultural contract before it. Mission Oaks voluntarily dismissed the remaining Williamson Act cause of action. (See generally, *Adler* v. *Vaicius* (1993) 21 Cal.App.4th 1770, 1776-1777 [27 Cal.Rptr.2d 32]; *International Industries, Inc.* v. *Olen* (1978) 21 Cal.3d 218, 221 [145 Cal.Rptr. 691, 577 P.2d 1031].)

The judgment is affirmed in all respects except the denial of attorney's fees and costs to the County, which we reverse. The cause is remanded to the

trial court with directions to determine and award reasonable attorney's fees to the County at trial and on appeal. (*Church of Scientology* v. *Wollersheim* (1996) 42 Cal.App.4th 628, 659-660 [49 Cal.Rptr.2d 620]; *Bradbury* v. *Superior Court, supra,* 49 Cal.App.4th at p. 1119; *Dove Audio, Inc.* v. *Rosenfeld, Meyer & Susman, supra,* 47 Cal.App.4th at p. 785.) Costs to respondents.

Gilbert, J., and Yegan, J., concurred.

A petition for a rehearing was denied July 16, 1998, and the petition of appellant Mission Oaks Ranch, Ltd. for review by the Supreme Court was denied October 14, 1998. Baxter, J., and Brown, J., were of the opinion that the petition should be granted.